(No. 22951 ▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN BROSNAN, Plaintiff in Error.

*Opinion filed October 14, 1935—Rehearing denied Dec. 4, 1935.*

Louis Greenberg, for plaintiff in error.

Otto Kerner, Attorney General, Thomas J. Courtney, State's Attorney, and J. J. Neiger, (Edward E. Wilson, Henry E. Seyfarth, and Amos P. Scruggs, of counsel,) for the People.

Mr. Justice Herrick delivered the opinion of the court:

John Brosnan was found guilty in the municipal court of Chicago, on a trial before the court without a jury, of the offense of contributing to the delinquency of a minor child and sentenced to imprisonment for one year in the house of correction and to pay a fine of $200. The record is brought here by the defendant on writ of error to the Appellate Court for the First District, which affirmed the judgment of the trial court.

The defendant urges as one ground for reversal that the court erred in overruling the motion to quash the information, and in support thereof contends that the word "or," in the expression "to be or to become a delinquent child," in the information, is a fatal defect, being bad for duplicity. The motion to quash was oral, did not specify any particulars wherein the information was defective and therefore raised only questions of substance. (*People* v. *Fox,* 346 Ill. 374; *People* v. *Nelson,* 320 id. 273.) The offense as charged in the information is in the language of the statute. (Cahill's Stat. 1933, chap. 38, sec. 2, par. 100, p. 999; Smith's Stat. 1933, p. 1014.) The word "or" is a fatal defect only when its use renders the statement of the offense uncertain. (Cahill's Stat. 1933, chap. 38, div. 11, sec. 6, p. 1083; Smith's Stat. 1933, p. 1100; *People* v. *Farrell,* 349 Ill. 129.) The trial court properly refused to quash the information.

The further contention is made that the child must be the subject of the crime, and that there is no evidence that the defendant committed any act upon the child which directly tended to render her delinquent or that she is or has

become delinquent by reason of the acts charged against the defendant. It is not necessary, under the language of the statute, that any offense be committed directly upon the person of the child. The wording of section 2 of "An act to define and punish the crime of contributing to the delinquency of children" is: "Any person who shall knowingly or willfully cause, aid or encourage any * * * female under the age of eighteen (18) years to be or to become a delinquent child * * * or who shall knowingly or willfully do acts which directly tend to render any such child so delinquent * * * * shall be deemed guilty of the crime of contributing to the delinquency of children," etc. It is not necessary, in order to constitute the offense, that the child who is the subject of the crime be a delinquent child. *People* v. *Klyczek,* 307 Ill. 150.

The defendant charges that the trial court erred in admitting evidence of the commission of other crimes. The abstract does not show any objection to the admission of such evidence nor any motion to exclude the same. Where it is sought to review the rulings of the trial court on the admission or rejection of evidence the abstract must show the objections made thereto together with the court's rulings thereon. (*People* v. *Hager,* 249 Ill. 603; *Gilman* v. *People,* 178 id. 19.) The error argued upon the admission of evidence will not be considered.

The defendant next urges that he was not sufficiently identified as the person guilty of committing the offense charged and that his guilt was not proved beyond a reasonable doubt. The offense was alleged to have occurred on September 16, 1933. The complaining witness, Betty Jane Rydeen, then eleven years old and a pupil in the sixth grade at St. Clothilde's school, in Chicago, testified that on that day she first saw the defendant trying to open the door of St. Clothilde's Church about 10:30 or 11:00 o'clock A. M.; that on failing to enter the church he went to his dirty-colored, green Plymouth car parked at the

curb in front of the church, where he called to her, asking her to come over; that when she reached the car he said to her, "Do you want to see something funny?" that he then opened his pants and exposed himself and made a very obscene proposal to her, and that she turned and ran away. Her friend Bonnie Jane Hoyer, who was standing near, joined her. Betty next saw the defendant at the police station on January 3 following. He was there brought before her. She recognized him immediately and was positive he was the man and later pointed him out in the court room at the trial.

Bonnie Jane Hoyer, ten years of age and in the fifth grade of a different school, testified she was with Betty on the morning of September 16, and heard the defendant call to Betty that he wanted to ask her a question; that she had never seen him before and did not hear what he further said to Betty nor did she see him expose himself, but when Betty turned from the car she heard her say "Oh!" and noticed how white she was; that they both ran home and reported to Bonnie's mother, and then to Betty's mother, what had happened. This witness next saw the defendant on January 3, while she was skating around the block in this same neighborhood. The defendant got out of a green Plymouth car and beckoned to her. She immediately skated home and told her mother. In a short time the police officers came and the witness described the defendant to them. Later that day, at the police station, the defendant was brought out for her inspection. She at once identified him as the man who had beckoned to her earlier in the day and the same man who had called to Betty Jane Rydeen on September 16.

Officer Masterson testified that on January 3, pursuant to a telephone call, he went to the Hoyer home and obtained a description of the defendant. He soon thereafter met the defendant driving his green Plymouth car and arrested him. The defendant claimed his car was not func-

tioning properly and he was driving it around trying to repair it. On taking the defendant to the Hoyer home Bonnie identified him, and later in the police station Bonnie again identified him.

The defendant testified. He denied his guilt and stated he was thirty-four years of age; that he worked at a booking place on Cottage Grove avenue; that on Saturday, September 16, he drove his wife and sister to work downtown, leaving home about 8:00 A. M.; that he then picked up Mrs. McNeff (a sister of his wife's mother) and took her to his mother-in-law's house, at 8054 Drexel, where he was living; that he remained there and read the paper until he went to his work, a few minutes before 11:30; that he was not in the vicinity of St. Clothilde's Church at any time prior to January 3. He denied seeing or exposing himself to Betty, and stated he had never seen either Betty or Bonnie before his arrest. He explained his presence in the vicinity of the church on January 3 by saying he had told Mrs. McNeff that morning that her sister was very low and Mrs. McNeff had requested him to drive her to St. Clothilde's Church, where she went to light a candle; that when she went into the church he tried to find out what was wrong with his car and was arrested while trying to repair it. Mrs. McNeff said the defendant came for her every morning about 9:00 o'clock from Labor day of 1933 until after his arrest on January 3, taking her to his house, where she was taking care of her sister; that on arriving there he always remained until he went to work at 11:15, and he did not leave the house on September 16 until 11:15; that on January 3 at her request he drove her to St. Clothilde's Church to light a candle.

Four witnesses testified to the defendant's good reputation. In rebuttal, May Eleanor Sweeney, a girl thirteen years old, in the eighth grade of St. Clothilde's school, stated she saw the defendant about 10:25 A. M., during the recess period, in the middle of September, 1933, on

the sidewalk, one-half block from the school; that he got out of his car, whistled, opened his pants and exposed himself to her; that he had a green Plymouth car and was about thirty-five feet from her at that time; that she again saw him in that neighborhood on December 12 and at the police station on January 4. Mary Ann Scribner, twelve years old, who was walking home from St. Clothilde's Church on December 16, about 10:05 A. M., saw the defendant on the opposite side of the street, standing back of his green Plymouth car; he unbuttoned his pants and exposed himself to her. Betty Jane Rydeen's mother, and Gertrude Sweeney, regular attendants of St. Clothilde's Church, testified that there was not, and never had been, a place at the church for lighting a candle.

Most of the witnesses here to the circumstances bearing directly upon the defendant's guilt were children. The trial judge saw and heard them testify. He had the advantage of being able to observe their conduct and demeanor while testifying, their interest or lack of interest in the result of the case, their bias or prejudice, if any was shown, and their intelligence and understanding of the things about which they testified. He was in a better position than a court of review to determine their credibility. Where the evidence is merely conflicting this court is not justified in disturbing the judgment of the trial court. (*People* v. *Bolger,* 359 Ill. 58.) Identification of the defendant by the People's witnesses was positive. This court would not be warranted in setting aside the finding of the trial court on that issue. (*People* v. *Schladweiler,* 315 Ill. 553.) There is in the record ample evidence to sustain a conviction, and it cannot be said that there is reasonable doubt of the defendant's guilt.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*