39 So.2d 678

**SMITHSON v. STATE.**

**6 Div. 712.**

Court of Appeals of Alabama.

March 29, 1949.

Chas. W. Greer and Maurice Bishop, both of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

W. Emmett Perry, Circuit Sol., of Birmingham, amicus curiae.

344

CARR, Judge.

This case was assigned to Presiding Judge BRICKEN, who prepared the opinion hereafter appearing. A majority being in disagreement, that opinion becomes a dissent. The effect of the dissenting opinion would be to reaffirm the conclusions we reached in the case of Moore v. State, 33 Ala.App. 188, 31 So.2d 373.

As Mr. Justice Frankfurter of the United States Supreme Court recently stated: "Wisdom too often never comes, and so one ought not to reject it merely because it comes late."

After considerable study and research, we now entertain the view that we fell into error in the Moore case, in holding that the prosecution in that cause was improperly predicated on violations of the provisions of Title 62, Section 324, Code 1940.

We do not question the soundness of the conclusion that the facts therein disclosed are sufficient to base a prosecution for the offense of assault and battery. This is supported by many authorities.

There can be no doubt that it is within the competency of the legislature to create two or more criminal offenses which may be committed by a single act. They may be different in kind as well as degree. Vol. 22, C.J.S., Criminal Law, § 9, page 59; Gunter v. State, 111 Ala. 23, 20 So. 632, 56 Am.St.Rep. 17.

As stated by our Presiding Judge, this case originated in the Juvenile and Domestic Relations Court of Jefferson County. There the State introduced the testimony of several witnesses. The defendant did not testify nor offer any evidence in support of his defense.

When the case came to trial on appeal to the Circuit Court it was agreed that the cause would be submitted on the testimony which was taken in the Juvenile Court, and it was agreed also that a statement of the defendant's testimony would be stipulated and considered by the court as his evidence at the trial.

The evidence of the accused as stipulated is recited in full in Presiding Judge BRICKEN'S opinion.

The State introduced evidence relating to two different occasions which occurred about a week apart.

With reference to the first of these, Barbara Harris testified that, in company with

her younger sister, Patricia, and a little boy, she went to a picture show at an East Lake theater; that the accused came and sat by her sister who occupied a seat immediately to the right of witness. We copy here from the record:

"Q Tell the Court, Barbara, what happened after Mr. Smithson sat down? A. Patricia was playing with him, and I told her not to be playing around strange people and she said he was only being nice to her. Then he put his hat over himself and exposed himself, and I got up and went to the lobby * * *

"Q Barbara, you say this man exposed himself. Tell the Court what you mean by that. A Well, he put his hat over himself and started playing with himself.

"Q Put his hat over himself? A Yes, sir.

"Q Where? A Down here, and then he motioned for me to come sit down by him. There was an extra seat there by him, but I got up and went to the lobby. * * *

"Q Barbara, I know it is embarrassing to you to describe this situation, but it comes necessary for me to ask you. When you say you saw the defendant, Mr. Smithson here, playing with himself, get a little bit more specific and say what you saw. A I saw what he exposed.

"Q What was that? A That was down here. I saw what he exposed. I saw he was playing with himself.".

On the Saturday following, according to the testimony of Barbara, this occurred:

"Q Barbara, I believe I asked you if on the Saturday following the occasion you have just described, which would be December 7, you went to the East Lake Theater with Edith Abernathy? A Yes, sir.

"Q And your little sister, Patricia. A Yes, sir.

"Q Now, on this occasion did you sit at about the same place you sat before or where did you sit? A I think I sit in the middle row. I am not sure it was the same place, but it was somewhere along in there.

"Q Somewhere along toward the front? A Yes, sir.

"Q Now, did anything unusual happen this time? Did anything unusual happen while you were in the picture show on Saturday, December 7? A I saw Mr. Smithson.

"Q At that time while you were in the picture show— A He came in and sat behind us.

"Q Behind you? A Yes, sir.

"Q This defendant? A Yes, sir.

"Q He came in and sat behind you? A Yes, sir.

"Q Sat behind you? A Yes, sir.

"Q Did he do anything out of the ordinary? A I had my legs wrapped up under my chair and he was sitting down behind me and he put his legs around my legs.

"Q He put his feet around your legs? A Yes. sir.

"Q And locked them in front of your legs? A Yes, and he started rubbing my legs.

"Q With his feet? A Yes, sir.

A police officer was asked this question: "What statement did Mr. Smithson make to Mr. Davis in regard to the before mentioned incidents, alleged incidents, in the East Lake Theater?" To which he replied: "I asked him why did he put his legs around the little girl and his answer was, he didn't know why he did these things. He just went berserk at times and I asked him if he exposed his privates and he said if he did he didn't remember it. That was about all he said."

It appears that Barbara Harris was eleven years of age at the time in question.

We have delineated the pertinent parts of the testimony. This will suffice as a basis for our review.

The creation of juvenile courts in the various states is of fairly recent origin. Problems affecting and influencing the welfare of the youth have increased and become more complex and involved within the past few decades. This is reflected in a large measure by the records which evince a high rate of juvenile delinquency.

Legislatures have sensed the dire need of affording more protection to the physical, mental, and moral well-being of children to the end that they may be directed away from the paths of crime and other forms of deliquency.

In consonance with this need, many laws have been enacted for the protection of minors, and for the convenient and expeditious enforcement of the provisions of these statutes juvenile courts have been established.

The Legislature of this State passed laws relating to this matter, and they appear first in Code 1907, Sections 6450–6465. With some amendments these laws were reenacted and codified as Sections 3528–3559, Code 1923, and subsequently as Sections 350–383, Title 13, Code 1940. Sections 311–330, Title 62, Code 1940, are in effect an elaboration of the general laws and are made applicable to Jefferson County.

The prosecution of the case at bar proceeded in the juvenile court and was based on the alleged violations of Section 324 of the local law. The pertinent parts of this section are:

"Any person who shall commit any act, or omit the performance of any legal duty, which act * * * causes or tends to cause or encourage any male child under sixteen years of age or any female child under eighteen years of age, to become dependent, neglected, or delinquent, as defined herein, or which act or omission contributes thereto; or any person who shall by any act, word, conduct, or omission of legal duty, or who shall * * * induce or endeavor to induce * * * aid or encourage any such child * * * to follow any course of conduct, or to so live as would cause, or manifestly tend to cause, any such child * * *. to become, or remain, dependent, neglected, or delinquent, as defined herein, to the end that such children may be protected from such influences, shall be guilty of a misdemeanor and upon conviction * * *."

As a guide to the meaning of the terms set out in the act, Section 311 provides in part:.

"The words 'delinquent child' shall mean any male child who while under sixteen years of age, or any female child who while under eighteen years of age, being or residing in such county, violates any penal law of the United States or of this state, or any regulation, ordinance or law of any city, town, or municipality of such county; or who commits any offense or act for which he or she could be prosecuted in a method partaking of the nature of a criminal action or proceeding; or who is beyond the control of his or her parent, parents, guardian or custodian, or who defies their authority, or who is otherwise incorrigible; or who is guilty of immoral conduct; or who is leading, or from any cause is in danger of leading an idle, dissolute, lewd or immoral life, or who is found in any place, for permitting which, an adult may be punished by law * * *."

In the construction of statutes similar to ours, the courts have adhered to the rule that it is not necessary or required to prove that the minor in question is in fact delinquent at the time the acts were committed upon which the prosecution is predicated. A contrary view would defeat the beneficent purposes of the statute. To delay the enforcement of the provisions until the child is steeped in immorality and delinquency would tend to destroy the deterring and restraining influences the legislature intended to provide. People v. Klyczek, 307 Ill. 150, 138 N.E. 275; State v. Harris, 105 W.Va. 165, 141 S.E. 637; Loveland et al. v. State, 53 Ariz. 131, 86 P.2d 942; People v. Brosnan, 361 Ill. 545, 198 N.E. 708.

We entertain the view that the guilt of the appellant in the instant case did not depend upon proof that the little girl in question yielded to or acquiesced in or in some manner evidenced approval of the conduct of the accused, or that delinquency in fact resulted therefrom. To hold otherwise would have the effect of fixing guilt vel non not solely upon acts or behavior of the defendant but rather on the character of the child and her moral acumen to resist the importunities and approaches.

The evident intent of the legislature in this respect is disclosed by the inclusion in

the statute of such words as "tends to cause", "encourage", "endeavor to induce", and "manifestly tend to cause."

Protective laws of this nature should be construed and interpreted so as to forward the purposeful intent of the enactors. Clearly, here two aims are sought: (1) To protect minors not delinquent from any influence or condition that might tend to delinquency. (2) To punish those who commit any acts or omit the performance of any legal duty, the effect of which is to cause a child to remain a delinquent. It is not a statute to reform, but a statute to prevent and deter. People v. Cohen, 62 Cal.App. 521, 217 P. 78; Wallin v. State, Okl.Cr.App., 182 P.2d 788; People v. McDougal, 74 Cal.App. 666, 241 P. 598.

The cases that hold to the contrary should be considered in the light of the language of the statutes they seek to construe.

We have examined *many* authorities which have treated the question of instant concern. Those that will be reviewed and cited had under consideration a statute which in many respects is analogous to ours. In each case the court held that the delineated facts were sufficient to sustain a judgment of conviction for contributing to the delinquency of a minor.

The case of Wallin v. State, supra, discloses that the defendant made indecent exposures in the presence of the minor. The evidence is to like effect in People v. Brosnan, supra.

The proof in the case of People v. Cohen, supra [62 Cal.App. 521, 217 P. 79], supports these allegations in the complaint:

"That at all the times herein mentioned the said Harry Y. Cohen was and is an artful and designing person, and did then and there endeavor and attempt to influence, cause, allow, and to persuade and cause the said Lillian Alleen Hildreth to come within the influence, persuasion, and control of the said defendant, Harry Y. Cohen, at the times and places last aforesaid, did then and there willfully and unlawfully, on or about the 11th day of September, 1922, feel, fondle, and handle the limbs and private parts of the said Lillian Alleen Hildreth with the intent and purpose of arousing and gratifying the passions of the said defendant, Harry Y. Cohen, and of the said Lillian Alleen Hildreth, a minor child under the age of 21 years, to wit, of the age of 16 years."

In the case of Loveland et al. v. State, supra, a conviction was sustained on proof that the accused gave the minor intoxicating liquors in such an amount that intoxication resulted.

The case of People v. Hemma, 94 Cal. App. 25, 270 P. 457, 458, discloses these facts: The accused, a man 42 years of age, wrote and delivered a note to a girl 15 years old. The note was as follows: "Tonight will wait down east Road where the Blue Gum Tree's will be there by 9/30 and will wait until 11." We excerpt from the opinion:

"Inasmuch as the girl did not go to the suggested place of rendezvous, we agree with counsel for appellant in his contention that, if any crime was committed by defendant, the offense was completed by the delivery of the note. It is not material, although it appears to be the fact, that the defendant did not succeed in obtaining a favorable response to the suggestion contained in the note. If he has committed a crime, the offense consisted solely in the doing of an act which in its nature was such that it would tend to cause, encourage, and contribute to delinquency on the part of the minor. * * * The sole question to be decided is presented by appellant's contention that the delivery of said note by the defendant, a man of mature years, to a young girl in no way related to him, and without any apparent good reason therefor, does not carry with it any necessary implication that by said act he was seeking to persuade her to the commission of an act which would place her in danger of leading an idle, dissolute, lewd, or immoral life. We are of the opinion that this contention should not be sustained, and that, in the absence of any explanation showing an innocent purpose, the natural and reasonable tendency of the defendant's action, according to its manifest intention, was to persuade the young girl to commit an act such as this statute is intended to prevent."

The evidence in the case of People v. McDougal, supra, was substantially as follows: The defendant accosted a girl 12 years of age and offered her candy and $5 if she would visit his room in a hotel. It appears that the child did proceed with the accused along the public streets and an unlighted alley in the direction of the hotel. At this point she refused to go further and immediately informed her parents and others of the instance, and assisted in the defendant's apprehension.

The court posed this question as pertinent for a jury response: "Would the defendant's conduct toward her cause or manifestly tend to cause her to become a delinquent child?" [74 Cal.App. 666, 241 P. 600]

In treating the question the court wrote a very able opinion. Those who are particularly interested in the matter of instant concern will profit by a careful study of this opinion.

We take the facts from the opinion in the case of State v. Tweedy, 165 Wash. 281, 5 P.2d 335, 336:

"There is no merit to appellant's first contention that the evidence is insufficient to sustain the judgment. These two young girls were in room 214 with Donald at the time the appellant arrived with the four glasses and the two bottles of Canada Dry. Finding his son in the presence of these two young girls, he made no protest or objection. But on the contrary drank with them, and smoked cigarettes with them. He took the older girl onto his lap and kissed her. He kissed the younger girl. There is also competent evidence from which the jury was justified in finding that the appellant told 'dirty stories' in the presence of these girls."

See also, People v. Kinser, 99 Cal.App. 778, 279 P. 488; People v. Voice, 68 Cal. App.2d 610, 157 P.2d 436; People v. Codina, 30 Cal.2d 356, 181 P.2d 881.

We entertain the view that the prosecution was not improvidently begun and that the evidence was sufficient and adequate to pose a factual issue.

We conclude that on the basis of the facts the judgment of the court below should not be disturbed. Pride v. State, 32 Ala.App. 639, 29 So.2d 346; Williams v. State, 17 Ala.App. 442, 85 So. 879.

Affirmed.

HARWOOD, J., concurs.

BRICKEN, Presiding Judge (dissenting).

The prosecution in this case originated in the Juvenile and Domestic Relations Court of Jefferson County, and upon the trial in said court the defendant was adjudged guilty, and appealed to the circuit court, where he was tried upon an amended complaint which reads as follows:

"Personally appeared before me, Collins Urquhart, Solicitor of Juvenile and Domestic Relations Court of Jefferson County Officer M. S. Davis who being by me first duly sworn, deposes and says:

"First: That George Washington Smithson has within twelve months before the making of this affidavit, in said county, committed an act, or omitted the performance of a legal duty owed by the said George Washington Smithson to the hereinafter named child, which act, or omission of legal duty, caused, or tended to cause, or encouraged Barbara Harris, a female child under eighteen years of age, to become dependent, neglected or delinquent, as defined by law in said county, or that the said act or omission contributed thereto; in that the said George Washington Smithson, did within said twelve months, in said County *did unlawfully place his leg over the legs of said Barbara Harris, in an attempt to draw her closely to him.*"

On the trial in the circuit court no witnesses were examined. In lieu of taking testimony, the cause was submitted upon an agreement made and entered into and filed by counsel for respective parties and with consent of the trial court. Said agreement is as follows:

"It is hereby agreed that the two cases against George Washington Smithson be, and hereby are, submitted to Judge Robert J. Wheeler without taking any further testimony than that testimony which is hereby attached and made a part of this

record, which was taken in the Juvenile and Domestic Relations Court for Jefferson County, with the exception that a statement of the defendant's testimony will be herein stipulated. The defendant withdraws his jury demand, and the case is herewith submitted on the original warrants of arrest, and defendant waives the filing of a Solicitor's complaint.

"The parties further stipulate that the defendant's evidence will be that the defendant was in the East Lake Theatre on the occasion complained of; that he did sit down behind two girls, one of whom later turned out to be Barbara Harris; that in making himself comfortable he did stretch out his feet and felt his feet touch the feet of the girl in front of him; that he thereupon begged the girl's pardon and stated that he had not intended to touch her; that he did not wrap his feet around her legs or attempt to feel of her feet or legs; that he did feel his feet come in contact with the little girl's feet or ankles and he thereupon immediately withdrew his feet and apologized; that he thought no more of the matter until the officers arrested him as he left the theatre; that he did get up and go to the Men's Rest Room but he didn't see Barbara anywhere in that vicinity; that when he went back to resume, during the picture, the seat he had left was taken and he took one several seats behind; that on Saturday November 30th being the Saturday preceding the date of the arrest of the defendant, the defendant states that he was not in the theatre in question, and did not enter the theatre in question on that date, and that he does not recall ever having seen any of the witnesses for the State; that on Saturday prior to the date of his arrest he was at home listening to a football game on the radio; that his son was then in the University of Alabama, and that he followed the Alabama team by radio.

"It is further stipulated that the Solicitor takes the position that his conduct amounted to contributing to the delinquency of a female, if the State's version of the evidence be believed. The defendant takes the position that if the State's version of what happened be considered to be true to a moral certainty and beyond a reasonable doubt, the defendant's conduct does not constitute contributing to the delinquency of a minor female."

As will be noted in the amended complaint, upon which the case was tried, the acts complained of as having been committed by the defendant were, "that he did unlawfully place his leg over the legs of Barbara Harris, in an attempt to draw her closely to him." It will be further noted that in said agreement (supra) the Solicitor, representing the State, contends and takes the position, that this (his) conduct amounted to contributing to the delinquency of a female child. The trial court accorded to this insistence, and it is our opinion in so doing, fell into error. Moore v. State, 33 Ala.App. 188, 31 So.2d 373. In order so to conclude, necessitates illogical and constrained stretch of imagination, or unwarranted conjecture, suspicion or surmise, none of which is countenanced, or allowable under the law.

Earnest counsel for appellant are correct in their strenuous insistence that the law in the case of Moore v. State, supra, is conclusive of this case, and further, that the lower court should have so held. Insisting in this connection that decisions of a court of last resort are to be regarded as law and should be followed by inferior courts, whatever the view of the latter may be, and the refusal of a lower court to follow an applicable rule of law pronounced by an appellate court is reversible error. The following enumerated authorities plainly support that proposition: Brewer v. State, 23 Ala.App. 116, 121 So. 689; Davis v. Clausen, 7 Ala.App. 381, 383, 62 So. 267; Sloss-Sheffield Steel & Iron Co. v. Dean, 17 Ala.App. 253, 84 So. 419; Arcless Contact Co. v. General Electric Co., 2 Cir., 87 F.2d 340; Jacoby v. Missouri Valley Drainage District, 349 Mo. 818, 163 S.W. 930; State ex rel. Walker v. Harrington, 3 Terry, Del., 14, 27 A.2d 67; 15 Corpus Juris 920, Sec. 308; 21 C.J.S., Courts, § 197.

Upon authority of the case of Moore v. State, supra, and decisions therein cited and quoted, the judgment of conviction rendered by the lower court in the case at bar, should be reversed and held for naught,

and as the law requires, a judgment should be rendered discharging him from further custody in this proceeding.

## Extended Opinion.

The writer takes no issue with the majority opinion as to the propriety and necessity for the existence of juvenile courts, which proposition has been laboriously dealt with in said opinion, even to the extent of devoting several pages of the opinion to innumerable decisions, in foreign states, and setting out in extenso the facts in each of said cases upon which judgments of conviction were rendered. In every instance, it will be noted, by reference to said opinion, the recited facts in each of them discloses acts of perversion, lewdness, indecency, morbidness and abnormal, to the extent of being obnoxious in the extreme, and calculated to shock the moral sense by a disregard of chastity, or modesty, and of course, unlawfully.

The majority opinion, as will be noted, consists of nearly eight full pages, and in all of this lengthy document the only reference to the case at bar is as follows: "We entertain the view that the prosecution was not improvidently begun and that the evidence was sufficient and adequate to pose a factual issue."

Certainly my associates do not insist, or did not intend to imply, or hold, that the undisputed facts in the instant case, bear any analogy to either of the state of facts detailed in the cited cases.

If the accusation, and facts, in the case at bar were in any manner analogous, to the quoted abnormal facts, collated and recited in the majority opinion, there would have been no controversy or contention or difference of opinion relative to a conclusion here.

As stated, hereinabove, the complaint, as amended, and upon which this appellant was tried, charged that the accused, *"placed his leg over the legs of said Barbara Harris, in an attempt to draw her closely to him."* Hence the accused was called upon and required to answer this specific charge, and none other. Brown v. State, 20 Ala.App. 39, 100 So. 616.

The charge in the complaint was involved and crudely drawn; and, under the facts agreed upon in this case, the act complained of was impossible of consummation; as it is shown without dispute at the time of its alleged commission the defendant and the alleged injured party were seated in a picture show, he being seated *immediately behind* the girl, and she was seated in the row of 'seats *in front of him.* Under these conditions, and situation, it conclusively appears it would have been absolutely impossible for him to have drawn the girl towards him, the offense with which he was charged, for he could not draw the girl either under the seat or over it, which would have been necessary and the only manner in which it could have been done.

The testimony of the defendant agreed upon, was to the effect that "he did sit down behind two girls, one of whom later turned out to be Barbara Harris (the alleged injured party), that in making himself comfortable he did stretch out his feet and felt his feet touch the feet of the girl in front of him; that he thereupon begged the girl's pardon and stated that he had not intended to touch her." This testimony of the defendant, i.e. that he apologized, was not disputed or was it in conflict.

The record discloses that this prosecution was commenced, not by the alleged injured party, or by any aggrieved person, but by an assiduous officer of court, a policeman, who personally knew none of the facts as to the incident complained of, and hence his original affidavit was based upon hearsay only.

This being a criminal proceeding, the accused, as in all prosecutions, was certainly entitled to due process of law.

The principle that no man shall be deprived of his liberty or property except by "the law of the land" is said to be more ancient than written constitutions, "and breathes so palpably of exact justice that it needs no formulation in the organic law." It is but an expression of the fundamental principle that inspired civilized man to form a government, the ultimate purpose of which is to protect the in-

351

dividual in working out his destiny, and finds expression in our Constitution in these words: "That in all criminal prosecutions, the accused has a right to be heard by himself and counsel, or either; * * * and he shall not be compelled to give evidence against himself, nor be deprived of life, liberty, or property, except by due process of law," and "That all courts shall be open; and that every person, for any injury done him, in his * * * person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay." Constitution of Alabama 1901, Sections 6, 13.

The manifest purposes of the quoted constitutional provisions, where life, liberty, and property are affected, are to secure the citizen against the arbitrary action of those in authority, and to place him under the protection of the law. The expression "due process of law" has been held to be the equivalent of "the law of the land." State v. Bush, 12 Ala.App. 309, 311, 68 So. 492, 493.

In the case of Ware v. Dunn, 80 Cal.App. 2d 936, 183 P.2d 128, 133, it was said:

"From time immemorial the most conspicuous feature of history has been the struggle between liberty and authority. Today, as in ages past, we are not without tragic proof that the exacted power of some governments to ignore the inalienable right of the individual to liberty and to resort to lawless enforcement of the law is the handmaid of tyranny. No higher duty, no more solemn responsibility, rests upon the courts than to maintain the constitutional and statutory shields planned and inscribed to preserve liberty under law and protect each individual from oppression and wrong, from whatever source it may emanate."

This appellant was also entitled to the presumption that he was innocent.

It is a well settled proposition, that the innocence of the accused is presumed until his guilt is established by evidence, in all the material aspects of the case, beyond a reasonable doubt, and to a moral certainty; and it may also be stated that the evidence of guilt must be "strong and cogent," and that unless it is so strong and cogent as to show the defendant's guilt to a moral certainty he should be acquitted.

I deem it pertinent to reiterate here the statement made by the court in our recent case of Turner v. State, 33 Ala.App. 607, 35 So.2d 624, 625, wherein this court said:

"Human liberty is too sacred and has been too dearly bought to authorize a conviction except upon legal evidence connecting the defendant with the commission of a crime, and that beyond a reasonable doubt. Facts which would warrant a suspicion however strong do not overcome the presumption of innocence."

The inconsistency of the majority opinion, here, Carr, J., is made clearly apparent in the case of Austin v. State, 31 Ala.App. 630, 21 So.2d 126, by Carr, J., wherein the following appears:

"The prosecuting witness, a little girl nine years of age, testified that, while attending a picture show in the city of Florence, Alabama, the defendant, against her consent, held her and placed his hands on her body in an indecent and rude manner. If established by the required proof, this was sufficient upon which to base a conviction as charged."

In said case the defendant was charged with *assault* and *battery*. The recital of the facts in the above case, as will be noted, were far more heinous in every respect from the facts in the case at bar, where the alleged wrongful act merely discloses that this appellant's feet touched the feet of the girl in front of him, which act defendant testified was purely accidental, and for which he immediately apologized, and there is no contention that he undertook to further molest the girl by word or act.

The Moore case, adverted to in the majority opinion, was recently promulgated by this court with a full concurrence. The decision was predicated upon opinions of the Supreme Court, exactly in point. The overruling of said case, in the majority opinion, of course is limited to the opinion of this court and has no application to the several Supreme Court's decisions upon

which the Moore case was rested. I still maintain the opinion in said case is sound and not subject to the criticism indulged in the majority opinion.

The conclusion in this case, as declared by the writer, was not dependent upon the Moore case, solely, said case need not have been cited although in point. The undisputed facts of the case at bar clearly disclose that the reversal of the case should be had and entered.

As stated, the instant case was tried without a jury. The statute authorizes such procedure. Title 15, Section 321, Code of Alabama 1940. However, the next succeeding statute, Title 15, Section 322, Code of Alabama 1940, provides on review of such case, the Court of Appeals or Supreme Court, *"shall review the same without any presumption in favor of the court below, either on the rulings on the law, or conclusions on the evidence, and if there be error, shall render such judgment in the cause as the court below should have rendered."* Notwithstanding the clear, explicit and emphatic terms of the statute, above quoted, it has been construed in some decisions to mean that the court's finding should be treated like the verdict of a jury. Such construction is not iron clad or conclusive, or binding upon the reviewing court in every case. The stated construction in effect emasculates and renders null and void the express terms and provisions of the statute which cannot be done, for the law is, the court has no authority to look for the legislative intention in anything but the legislative language; that language may be explained; it cannot be detracted from or added to. The office of interpretation is not to improve the statute; it is to expound it; and the court knows nothing of the intention of an act, except from the words in which it is expressed, applied to the facts existing at the time. May v. Head, 210 Ala. 112, 96 So. 869. Moreover, in the opinion of the writer it would have been difficult, if not impossible to find any jury, of unbiased mind and free from hysterical influence who would ever have returned an adverse verdict on the facts disclosed by this case.

In conclusion, the writer reiterates with emphasis, that the judgment of conviction of the accused in this case, under the evidence, is wrong and cruelly unjust, and repugnant to an unbiased mind. Further, to hold that the act of the defendant, complained of, even in the slightest, tended to cause or encourage the girl in question to become dependent, neglected or delinquent was of necessity, due to unauthorized surmise, conjecture or suspicion, and were it not tragic to the unfortunate accused, would border upon the farcical. The law presumes a person will not commit an immoral act.

Moreover, the writer deems it proper to advert to the unusual and adverse interest extended and plainly manifest from the record, taken by initial judge who tried this case and rendered the judgment of conviction. Further, that on appeal to the circuit court, he appeared as prosecutor, and still further, appeared before the appellate court, on appeal, and made lengthy and impassioned argument for an affirmance of the judgment of the circuit court, and for approval of his own act upon the first trial. So far as the knowledge of the writer goes such a situation and condition was without precedent. As to all this, of course I impute no improper motive, but, as stated, there is no precedent for such activity or procedure. Our Supreme Court said, in the case of Ex parte State of Alabama (In re Stephenson), 113 Ala. 85, 21 So. 210:

"It is manifest that this tribunal can recognize no other representative of the state than the attorney general. Whether the state has an interest in the vacation of the order made in a criminal case by a court of competent jurisdiction, or whether there shall be a prohibition of the exercise of jurisdiction, or any other remedial writ prosecuted by the state,—at all times a matter of more or less gravity,—the law commits to the judgment and discretion of the attorney general, and when he proceeds he must proceed in the name of the state."

And further, in said opinion, supra, the court said: "Such application must be made in the name of the state, and must be made by and through the attorney gen-

eral. There is no other officer entitled to use the name and authority of the state."

After the "extended opinion," supra, of the writer was prepared, and presented to my associates, they deemed it necessary, and did rewrite the majority opinion, which now appears hereinabove. In that opinion as now appears it is admitted "The State introduced evidence relating to *two different occasions* which occurred about a week apart;" and then proceeds to set out in full the purported evidence as to what occurred on November 30, 1947; and it is evident that the affirmance of this cause was based principally, if not solely, on *that evidence*. The writer is in full accord with the insistence of able counsel for appellant to the effect, "Evidence as to what happened on the 30th of November was admitted, we presume, on the theory that it tended to identify, or show the intent of the defendant.

In this proceeding the only issue involved was formulated upon the "amended complaint" and defendant's plea of "not guilty," as therein charged. The judgment of conviction in the trial court, from which this appeal was taken, is based solely upon the "amended complaint." As stated hereinabove the only acts complained of in said amended complaint was "that said George Washington Smithson, did within said twelve months in said county did unlawfully *place his leg over the legs of said Barbara Harris, in an attempt to draw her closely to him."*

As to the foregoing, the majority opinion has wholly ignored the issue, supra, upon which the case was tried, or should have been tried. In the lengthy opinion of the majority, no mention is made of the amended complaint, nor of the plea of defendant. Said opinion does state: "The prosecution of the case at bar proceeded in the juvenile court (the appeal in this case is from the judgment rendered by the circuit court) and was based on the alleged violations of Section 324 of the local law." It then proceeds to set out in full said local law. My associates know, of course, that a blanket charge is not permissible in a criminal prosecution, for the law is, no man shall be twice put in jeopardy for the same offense,

and of the nature and cause of the accusation made against him he shall be fully informed before he is called to trial, than that accusation he cannot be supposed to stand prepared to answer.

The rule above announced, which requires that all evidence which is introduced shall be relevant to the guilt or the innocence of the accused, is always applied with considerable strictness in criminal proceedings. The wisdom and justice of this are self-evident. The defendant can with fairness be expected to come into court prepared to meet the accusations contained in the complaint only, and, on this account, all the evidence offered by the state should consist wholly of facts which were within the range and scope of the allegations contained in the evidence upon which he is being tried.

In Reynolds v. State, 23 Ala.App. 333, 125 So. 204, 205, the court said:

"It is requisite to a valid complaint, in a prosecution of this kind, that the particular facts, acts, words, conduct, omissions, etc., which it is contended cause accused to be guilty of the offense denounced * * * must be set out in the said complaint."

See also the case of Gallman v. State, 29 Ala.App. 264, 195 So. 768, 773, where the court said:

"The State, in the case at bar, should not have been permitted to build up a conviction of the defendant for the offense with which he was charged in the indictment on inferences of guilt from the fact that he had committed another offense, or other offenses.. In the case of McGee v. State, 24 Ala.App. 124, 131 So. 248, 250, it is said with reference to the rule announced: 'The justice, fairness, and reason for the rule is apparent, and, as said in the case of Gassenheimer v. State, 52 Ala. 313: "A strict adherence to it is necessary to prevent criminal prosecutions from becoming instruments of oppression and injustice." Dennison v. State, 17 Ala.App. 674, 677, 88 So. 211.'

"The defendant, here, was, in fairness, expected to appear in the lower court prepared to meet only the accusations contained in the indictment returned against him,

* * * and on this account the evidence offered by the State should have been confined wholly to facts which were within the range and scope of the allegations contained in that indictment and upon which the defendant was to be tried."

Further discussion is not deemed necessary. Due process of law has been denied to this appellant, and in my opinion to permit the judgment of conviction to stand, in the face of what has been said, would be unconscionable.