REDMANN, Judge.
Reversing the trial court, we annul as obtained by “ill practices,” C.C.P. art. 2004, a default judgment which, as appellee had prayed, cast appellant as solidarily liable on a promissory note on the face of which he was unmistakably liable only jointly.
The note holder has no semblance of grounds to consider himself entitled to collect his debt in full from one of six comakers of a note containing no promissory language other than “We promise to pay.” That the resulting obligation is not solida-ry is not open to question. Solidarity “is not presumed; it must be expressly stipulated” except where the law provides solidarity, C.C. art. 2093. The only negotiable instrument law provision of solidarity is La.R.S. 7:17(7), under which two or more persons signing an “I promise to pay” instrument are “deemed to be jointly and severally liable thereon.”
We are therefore dealing not with a merely questionable claim but with a patently insupportable claim of solidarity. Whether the patently insupportable claim was presented deliberately or inadvertently does not matter. The presentation of a patently insupportable claim to a court is an ill practice objectively, even if the party presenting it be ignorant of the patent in-supportability and therefore be subjectively in good faith.[1]
The judgment appealed from is reversed and the default judgment of May 18, 1972 is annulled at appellee’s cost.
Reversed and rendered.

. The note-holder argues that a defendant’s failure to answer at the time of the petition prevents a later action for nullity on grounds which could then have been raised. The law is to the contrary; Succession of Gilmore, 1924, 157 La. 130, 102 So. 94; Muller v. Michel Lecler, Inc., La.App.1972, 266 So.2d 916. Courts “afford relief against judgments irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of the legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be uneonscientious and inequitable,” City of New Orleans v. Le-Bourgeois, 1898, 50 La.Ann. 591, 23 So. 542, “even though no actual fraud or intentional wrong is shown in the procurement of the judgment,” Leidig v. Leidig, La.App.1966, 187 So.2d 201, 204.
Conflicts may arise between some principle of law, such as that seeking finality of judgments or that requiring affirmative defenses to be pleaded, and C.C.P. art. 2004’s principle of law that “A final judgment obtained by fraud or ill practices may be annulled.” Our noteholder might prefer to resolve such a conflict by assigning a greater importance to promptness than to probity. But C.C.P. art. 2004 does not deny its relief to the non-answerer or the non-appealer: if there must be a hierarchy of legal principles, art. 2004’s unqualified rule plainly outranks. The reason is evident: government does not provide courts to abet fraud or ill practice; uprightness in courts of justice is more important than swiftness or technical correctness in pleading or procedure.
The sole condition of art. 2004’s rule is that the nullity action be brought within a year. The only exception to the basic rule of art. 2004 is that of art. 2005: an appellate court judgment “may be annulled only when the ground for nullity did not appear in the record of appeal or was not considered by the appellate court.” (Emphasis added.) Art. 2005 allows an appellate judgment to be annulled, even when the ground is in the appellate record, if the ground was not considered by the appellate court. (See Tracy v. Dufrene, 1960, 240 La. 232, 121 So.2d 843). Thus art. 2005 itself contradicts any theory that unerring vigilance is a prerequisite to O.O.P. art. 2004’s simple rule allowing annulment of judgments resulting from fraud or ill practices.
Art. 2004 is clear; “A final judgment obtained by fraud or ill practices may be annulled.” The default judgment here in question was obtained by what is objectively ill practice. Nothing else matters.