320 So.2d 533 (1975)
Ben D. JOHNSON, Sr.
v.
Geddes A. JONES-JOURNET et al.
No. 55971.
Supreme Court of Louisiana.
September 5, 1975.
Rehearing Denied October 9, 1975.
*534 A. M. Trudeau, Jr., New Orleans, for plaintiff-applicant.
Jesse James Marks, Dorsey & Marks, New Orleans, for defendant-respondent Charles H. D. Bowers, Jr.
MARCUS, Justice.
On November 30, 1970, a promissory note payable to the order of Ben D. Johnson, Sr., was executed by Geddes A. Jones-Journet, Charles H. D. Bowers, Jr., Mrs. Naomi J. Parnell, George F. Geddes, Willie P. Davis, Sr., and Mrs. Velma M. Brewer.[1] Johnson instituted this suit to collect payment on the note on November 3, 1971, naming the six makers as defendants. Alleging that defendants were "jointly and severally indebted" to him, plaintiff sought judgment against all defendants, jointly and severally, in the full sum demanded. Of the five defendants served, Bowers and Davis failed to file responsive pleadings within the delays provided by law,[2] and, on May 18, 1972, a default judgment was rendered against them, casting them jointly and severally liable for the amount of the note less the amount received by plaintiff in a compromise with another defendant. Neither Davis and Bowers took an appeal from this judgment.
*535 On May 11, 1973, plaintiff filed a motion to examine Bowers, his judgment debtor, in aid of the execution of his judgment. On June 6, 1973,[3] Bowers responded by filing what he termed a "Motion to Annul and in the Alternative Modify Judgment" on the ground that ". . . the judgment when taken was not obtainable in law."[4] More specifically, defendant urged that, on the face of the pleadings, his liability to plaintiff as a co-maker was joint rather than in solido. Hence, he argued, judgment against him should have been, at most, limited to his virile share of the obligation represented by the note. Plaintiff filed an exception of no cause of action, which was sustained by the trial judge on the ground that the allegations of the attack constituted a defense that should have been urged in an appearance prior to final judgment.
On appeal, the judgment of the trial court was reversed, and plaintiff's default judgment was annulled. Johnson v. Jones-Journet, 306 So.2d 827 (La.App.4th Cir. 1974). The court of appeal, with one judge dissenting, held that obtaining a judgment on a claim patently insupportable by law is an "ill practice" under article 2004 of the Code of Civil Procedure, regardless of the subjective intent of the party urging the claim. Accordingly, the court concluded that defendant had stated a cause of action by alleging that the judgment taken was not "obtainable in law" and was, therefore, entitled to have the judgment annulled. We granted plaintiff's application for a writ of certiorari to review the judgment of the court of appeal. 39 So.2d 678 (La.1975).
Two issues must be considered for an appropriate resolution of this controversy: (1) whether the note evinces a joint or in solido obligation, and (2) if the obligation is joint, whether the allegations of defendant, if taken as true, form a sufficient basis for an action of nullity under article 2004 of the Code of Civil Procedure, which allows the annulment of judgments obtained by fraud or ill practices.

I.
When there is more than one obligor named in the same contract, the obligation it produces may, inter alia, be either joint or in solido.[5] When several persons join in the same contract to do the same thing, it produces a joint obligation on the part of the obligors.[6] However, where several persons obligate themselves to the obligee by the terms in solido or use any other expressions that clearly show that they intend that each one shall be separately bound to perform the whole of the obligation, it is called an obligation in solido on the part of the obligors.[7] An obligation in solido is not presumed; it must be expressly stipulated.[8]
Important consequences flow from the characterization of an obligation as joint or in solido. Where the obligation is joint, suit on the obligation must generally be brought against all obligors,[9] and the liability of each joint obligor is limited to his *536 virile share of the obligation.[10] However, suit on an obligation in solido may be brought against any one of the obligors, and the entire amount may be recovered from the obligor sued.[11]
It is well settled that, absent additional promissory language, the words "[w]e promise to pay" in a note signed by co-makers are insufficient to constitute the express stipulation of liability in solido required by law.[12] In such a case, the obligation is considered to be joint, and the liability of each co-maker is limited to his virile share of the obligation. Thus, it is clear that, under ordinary circumstances, defendant's liability on the note would be limited to his virile share, or one-sixth, of the obligation.
However, in his petition seeking judgment on the note, plaintiff alleged that the six defendants were "jointly and severally indebted" to him and prayed for judgment against all defendants "jointly and severally." In Louisiana, the common law term "joint and several" is considered synonymous with the civil law term "in solido."[13] Clearly, by seeking a judgment decreeing the co-makers liable jointly and severally (i.e., in solido) on the note, plaintiff erroneously claimed greater relief than the law allowed him.

II.
Having determined that plaintiff was not originally entitled to the relief he claimed, we must decide whether plaintiff's *537 obtaining a judgment by default under these circumstances constituted an "ill practice." According to article 2004 of the Code of Civil Procedure, any final judgment obtained by fraud or ill practices may be annulled. However, no definition of the term "ill practices" is given. Hence, an historical exegesis of the article is in order.
Article 2004 is drawn primarily from article 607 of the Code of Practice, which, in addition to announcing the general rule that judgment obtained by fraud or ill practices were subject to annulment, set forth as illustrations bribery of the judge or witnesses, production of forged documents, and perjury by the party obtaining the judgment.[14] These illustrations were not considered exhaustive of actionable fraud or ill practices, however; the jurisprudence set forth two criteria to determine whether a judgment had, in fact, been obtained by actionable fraud or ill practices: (1) the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief, and (2) the enforcement of the judgment would have been unconscionable and inequitable.[15]
When the Code of Civil Procedure replaced the Code of Practice in 1960, the former rule was retained as article 2004. Although the illustrations were deleted, ". . . there was no intention to change the law." [16] Hence, the criteria of relief set forth in the jurisprudence still obtains.
Evaluating defendant's allegations in light of these principles, we are unable to agree with the majority of the court of appeal that, if taken as true, defendant's allegations demonstrate a cause of action for annulment of the judgment on the ground that it was obtained through an "ill practice." First, there is no allegation that defendant was deprived of any legal right; he had ample opportunity to appear and assert any defense he desired, either in the trial court or by appeal. Defendant argues that the rendition of a judgment against him stipulating greater liability than he should be held at law constitutes a deprivation of his legal rights. However, it is well settled that an action of nullity may not, by raising errors of law, serve as a substitute for an appeal.[17] Second, considering that defendant was personally served in the original suit and afforded the opportunity to appear and urge that his liability was joint rather than in solido, it hardly seems unconscionable or inequitable to disallow his belated complaint that the judgment is contrary to law.
There are persuasive considerations against disturbing the integrity of final judgments obtained without artifice. Under article 2004, the legislature has determined *538 that, where a judgment is obtained in such a way (i. e., by fraud or ill practices) that its enforcement would be unconscionable, fundamental principles of equity and fair play sufficiently counterbalance those considerations and require that a judgment debtor be allowed to challenge the legitimacy of the judgment taken against him. Here, defendant has failed to allege either by facts or conclusion that the judgment against him was procured by fraud or ill practices. Rather, he has demonstrated only the inadvertent failure of both the plaintiff and the trial judge to note that the prayer and judgment were based substantially on an error of law, which was a proper subject for a defense to the suit. For these reasons, the trial judge correctly determined that defendant had not alleged a proper ground to arnul the judgment.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed, and the judgment of the district court sustaining the exception of no cause of action is reinstated.
NOTES
[1] The note read as follows:

[2] Defendant Geddes A. Jones-Journet was never served. Defendants Naomi J. Parnell and Velma Brewer were served and filed answers denying that they had executed the note in question. Defendant George F. Geddes was an absentee; a curator ad hoc appointed to represent him was served and filed an answer on his behalf generally denying the allegations of the petition. Plaintiff later compromised his claim against Geddes, and suit against him was dismissed with prejudice. The remaining two defendants, Willie P. Davis, Sr., and Dr. Charles H. D. Bowers, Jr., were served, but did not file responsive pleadings. Service of process was domiciliary on Davis and personal on Bowers.
[3] The action to annul a judgment on grounds of fraud or ill practices must be brought within one year of the discovery by the plaintiff. La.Code Civ.P. art. 2004 (1960). However, no plea of prescription has been filed, and "[c]ourts can not supply the plea of prescription." La.Civil Code art. 3463 (1870); La.Code Civ.P. art. 327 (1960). Hence, this issue is not before us.
[4] This was, in effect, an action to annul the judgment. See La.Code Civ.P. arts. 2001-06 (1960). Such an action is considered an ordinary proceeding as opposed to a summary proceeding. However, no objection was made to the procedure employed. Hence, any error in this regard is considered waived.
[5] La.Civil Code art. 2077 (1870).
[6] Id. art. 2080.
[7] Id. art. 2082. See also id. art. 2091.
[8] Id. art. 2093.
[9] Id. art. 2085.
[10] Id. art. 2086.

The proportion . . . is calculated by the number of the obligors, each one answering for an equal part, unless the parties have expressed a different intention.
Id.
[11] Id. arts. 2091, 2094, 2095. See also id. arts. 2097, 2098.
[12] E. g., Watkins v. Haydel, 172 La. 826, 135 So. 371 (1931); Swan v. Mayer, 211 So.2d 346 (La.App. 4th Cir. 1968). In contrast, where co-makers sign a note containing the promissory words "I promise to pay," each co-maker is regarded as having promised to pay the entire obligation, resulting in solidary liability on the part of each for the entire debt. La.R.S. 10:3-118(e) (1950), added by La.Acts 1974, No. 92, § 1, formerly La.R.S. 7:17(7) (1950).
[13] See, e. g., Meadow Brook Nat'l. Bank v. Recile, 302 F.Supp. 62, 67 n. 2 (E.D.La.1969); Shreveport Bank & Trust Co. v. Tyler, 275 So.2d 451, 452 (La.App.2d Cir. 1973); Flintkote Co. v. Thomas, 223 So.2d 676 (La.App.4th Cir. 1969); Wilks v. Allstate Insurance Co., 195 So.2d 390 (La.App.3d Cir. 1967). For a discussion of the common law rule of joint and several liability see United States v. Wainer, 108 F.Supp. 386 (N.D.Ill.1952), rev'd on other grounds, 211 F.2d 669 (7th Cir. 1954); Schram v. Perkins, 38 F.Supp. 404 (E.D.Mich.1941).

For example, article 2088 of the Civil Code provides:
The obligation is in solido, or joint and several between several creditors, when the title expressly gives to each of them the right of demanding payment of the total of what is due, and when the payment made to any one of them discharges the debtor, although the benefit of the obligation be to be shared and divided among the different creditors.
The phrase "or joint and several" has no counterpart in the French text of article 2083 of the Civil Code of 1825, the predecessor of article 2088 of the present Civil Code.
Similarly, La.R.S. 10:3-118 provides in pertinent part:
The following rules apply to all instruments:
. . . . .
(e) When an instrument containing the words `I promise to pay' is signed by two or more persons, they are deemed to be jointly and severally liable thereon.
The Louisiana Business Corporation Law provides in pertinent part:
. . . . .
If property or services taken in payment for shares are grossly overvalued contrary to the provisions of this Chapter, the shareholders who knowingly, or without the exercise of reasonable care and inquiry, consented thereto or voted in favor thereof shall be liable jointly and severally to the corporation for the benefit of creditors or shareholders, as their respective and relative interests may appear, for any loss or damage against therefrom.
La.R.S. 12:93 (1950), added by, La.Acts 1968, No. 105, § 1.
[14] Article 607 of the Code of Practice provided:

A definitive judgment may be annulled in all cases where it appears that it has been obtained through fraud or other ill practices on the part of the party in whose favor it was rendered; as if he had obtained the same by bribing the judge or the witnesses, or by producing forged documents, or by denying having received the payments of a sum, the receipt of which the defendant had lost or could not find at the time, but has found since the rendering of the judgment.
[15] E. g., Succession of Gilmore, 157 La. 130, 102 So. 94 (1924); City of New Orleans v. Le Bourgeois, 50 La.Ann. 591, 23 So. 542 (1898); Lazarus v. McGuirk, 42 La.Ann. 194, 8 So. 253 (1890).
[16] La.Code Civ.P. art. 2004, Comment (b) (1960).
[17] In Walsh v. Walsh, 215 La. 1099, 42 So.2d 860 (1949), cert. denied, 339 U.S. 914, 70 S.Ct. 575, 94 L.Ed. 1340 (1950), this court observed

. . . the difference between a judgment which may be erroneous as a matter of law, because of an insufficiency of evidence or otherwise, and one procured by fraud, ill-practice, or misrepresentation. It is only in the latter case that the action of nullity is permissible under article 607 of the Code of Practicefor it is firmly established that the remedy cannot be employed as a substitute for an appeal.
Id. at 1113, 42 So.2d at 864 (citations omitted).