NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-33


JULIAN E. LONG

VERSUS

LINDA LONG MINTON


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 204,289
HONORABLE HARRY FRED RANDOW, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ELIZABETH A. PICKETT
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and J. David Painter, Judges.

**AFFIRMED.**

Larry Alan Stewart
Stafford, Stewart & Potter
P. O. Box 1711
Alexandria, LA 71301
(318) 487-4910
  Counsel for Plaintiff-Appellant:
  Julian W. Long

Larry Woodrow Rivers
Attorney at Law
5208 Jackson St., Suite A
Alexandria, LA 71301
(318) 445-6581
  Counsel for Defendant-Appellee:
  Linda Long Minton

**Larry B. Minton**
**Attorney at Law**
**P. O. Drawer 13320**
**Alexandria, LA 71315-3320**
**(318) 487-0115**
  **Counsel for Defendant-Appellee:**
  **Linda Long Minton**

**Pickett, Judge.**

The plaintiff, Julian W. "Dooksie" Long, appeals a judgment of the trial court finding that Linda Long Minton paid for nineteen share of stock which her father sold to her in 1986.

## STATEMENT OF THE CASE

Julian E. Long founded Long's Preferred Products, a closely held corporation originally owned by Mr. Long and his wife, Alma Katherine Long. In the 1970s, both of their children, Linda "Susie" Long Minton and Julian W. "Dooksie" Long went to work for the corporation. By 1984, Mr. Long had transferred 20 of his 100 shares of stock to his children, 10 each to Mrs. Minton and Dooksie Long. In 1986, Mr. Long, concerned about his wife's gambling habit, decided to transfer nineteen shares of stock to Mrs. Minton and Dooksie Long. In a previous trial, Judge Ross Foote of the Ninth Judicial District Court held that that transaction from Mr. Long to Mrs. Minton was a sale, and this court affirmed that judgment. *Minton v. Long's Preferred Products*, an unpublished opinion bearing docket number 02-260 (La.App. 3 Cir. 10/2/02), 829 So.2d 669. Following rendition of that judgment, Mr. Long filed this suit on April 15, 2001, seeking to rescind the sale of nineteen shares to Mrs. Minton on the basis that she had not paid for them. After Mr. Long died on August 6, 2005, Dooksie Long was substituted as plaintiff in this suit.

Following a four-day trial before a jury, the jury concluded that Mrs. Minton had paid for the nineteen shares of stock. The trial court issued a judgment in conformity with the jury's findings on August 22, 2006.

## ASSIGNMENTS OF ERROR

The appellant, Julian W. "Dooksie" Long, asserts three assignments of error:

1

1. The jury erred in finding that the monthly payments received by Mr. Long were in payment for the purchase price of the stock.

2. The jury was clearly wrong in failing to accept the uncontradicted testimony of both accounting experts that the payments paid to Mr. Long were corporate dividends or distributions.

3. The jury erred in finding that the full purchase price was paid because the monthly payments paid by the corporation were not sufficient to satisfy the purchase price.

## DISCUSSION

All three of the appellant's assignments of error question whether the jury committed manifest error in its determination that the purchase price of the stock had been paid. The supreme court set forth the standard of review for an appellate court when considering a factual finding by the trial court in *Rosell v. ESCO*, 549 So.2d 840, 844-45 (La.1989) (citations and footnote omitted):

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneous--clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues *de novo*.

> When findings are based on determinations regarding the credibility of witnesses, the manifest error--clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or

implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

The defendant pled the affirmative defense of payment and, therefore, had the burden of proving by a preponderance of the evidence she paid for the stock at issue or the purchase price was paid on her behalf. *American Bank v. Saxena*, 553 So.2d 836 (La.1989). To determine the facts in this case, the jury was required to assess the credibility of the witnesses. In this case, the jury clearly made a determination that Mrs. Minton was the more credible witness. She testified that in 1986, her father approached her and told her he was going to sell her nineteen shares of stock in Long's Preferred Products at a price of $124,846.53. She stated that her brother Dooksie Long was offered the same deal. A promissory note dated September 23, 1986, for $124,846.53 at an annual interest rate of twelve percent, payable on demand with a term of five years, was introduced in the record. The note was not signed. A prior judgment of the court determined a sale took place and the original note was signed. Mrs. Minton agreed the note reflected the purchase price. The sole issue before the jury was whether the purchase price was paid.

Mrs. Minton explained that she never approached her father about purchasing the stock, nor did she negotiate the terms with him. It was her understanding that Mr. Long would be paid by the corporation. Long's Preferred Products was a Subchapter S corporation, and she understood additional payments would be made to her father. At the time, he was retiring, but he would continue to draw $4,000.00 each month from the corporation. Mrs. Minton stated that she never wrote a check to her father

3

for the purchase of the stock. It was her belief corporate income was paid directly to him. She also testified that her father never made a demand for payment on the note, even though she saw her father virtually every day until early 1998. She testified, and the records of the corporation indicate, that she was treated as a twenty-nine percent shareholder in the corporation from 1986 until early 1996, when her father sold her and her brother his remaining shares in the corporation, at which point she was treated as a fifty percent shareholder. The detailed descriptive list filed in the succession proceedings of Mrs. Long in 1996 (she died in 1990), did not include the promissory note as a debt.

Mrs. Minton stopped working for the corporation in 1997. In early 1998, Dooksie Long made an offer to purchase her fifty percent stake in the corporation. She testified that she was willing to buy his shares at the same price. When word of this exchange reached her father, Mr. Long confronted Mrs. Minton and told her that he did not want her to own the company. Soon thereafter, Mr. Long and Dooksie Long began taking legal action to rescind shares of stock from Mrs. Minton.

Dooksie Long testified that in 1986, his father did not sell nineteen shares of stock to him, he only transferred the usufruct of the stock. The stock was "parked" in his name. He testified that the corporation never agreed to pay Mr. Long for Mrs. Minton's stock. He stated that he did not remember much about the 1986 transaction.

The appellant's brief puts a lot of weight on the expert testimony of Mr. Daigrepont and Mr. Pesnell. Their charts and testimony, though, include very little information from 1986 through 1988, as those records, with the exception of some tax returns, are missing. The records also assume that the only money that was distributed to Mr. and Mrs. Long, Mrs. Minton, and Dooksie Long was that which

4

appears on the tax returns. The appellant's brief also claims that the numbers just do not add up, and Mrs. Minton could not have paid for the nineteen shares of stock. The jury, however, had evidence before it that Mr. Long never demanded payment on the promissory note, which prescribed in 1991, and never tried to rescind the sale until there was a disagreement.

Evidence was presented as to inconsistencies in the recordkeeping of the company as to who was paid what and for what. The defendant called into question the accuracy of the expert testimony based on assumptions for the crucial years of 1986 through 1990 for which there were almost no records at all. There was direct testimony from Mrs. Minton that her father received, in exchange for the stock, $4,000.00 per month, use of a car, health insurance, life insurance, and payments on credit cards. Dooksie Long denied this, however, as the records were not available, a credibility determination had to be made on this issue. The jury had ample evidence to support their findings, and there is no manifest error in their conclusion that Mrs. Minton paid Mr. Long for the stock.

As the jury's verdict is supported by the evidence, we find no manifest error in its conclusion. The judgment of the trial court is affirmed. Costs of this appeal are taxed against the appellant, Dooksie Long.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3, Uniform Rules, Courts of Appeal.