NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**CA 07-961**

**LINDA K. MINTON**

**VERSUS**

**LONG'S PREFERRED PRODUCTS, INC.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 196,819
HONORABLE F. RAE DONALDSON SWENT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**BILLY HOWARD EZELL
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Marc T. Amy, and Billy Howard Ezell, Judges.

**AFFIRMED.**

**Larry Alan Stewart
Andrew Potter Texada
Stafford, Stewart & Potter
P. O. Box 1711
Alexandria, LA 71301
(318) 487-4910
Counsel for Defendants/Appellants:
Long's Preferred Products, Inc.
Julian W. Long
Eva Long
Tracy Percy**

**Larry Woodrow Rivers**
**Attorney at Law**
**5208 Jackson Street, Suite A**
**Alexandria, LA 71301**
**(318) 445-6581**
**Counsel for Plaintiff/Appellee:**
**Linda K. Minton**

**Larry B. Minton**
**Attorney at Law**
**P. O. Drawer 13320**
**Alexandria, LA 71315-3320**
**(318) 487-0115**
**Counsel for Plaintiff/Appellee:**
**Linda K. Minton**

**Ezell, Judge.**

This case has a long legal history. Long's Preferred Products, Inc. is a family-owned corporation. Disagreements among the family members resulted in years of litigation. The case has been before this court several times on other issues. This time the case is before us on the issue of whether a lower court judgment should have been annulled because the judgment was based on false testimony. In the alternative, the Appellants claim that summary judgment was not proper.

## FACTS

Long's Preferred Products, Inc. was incorporated in 1975 by Julian E. Long and his wife, Alma K. Long. One hundred shares of stock were issued. In the 1980's, the Longs donated ten shares to their son, Julian W. "Dooksie" Long, and ten shares to their daughter, Linda K. Minton.

In 1986, Julian decided to transfer nineteen shares to Dooksie and nineteen shares to Linda. After their mother's death in 1990, the children inherited their mother's twenty-one shares of stock with their father retaining ownership of the remaining twenty-one shares of stock. In 1996, Julian sold his twenty-one shares to the children. The children continued running the business together until 1997, when Linda decided she could no longer work for Long's Preferred Products after a conflict developed between her and an employee. It was decided that one of the siblings would have to buy out the other's interest in the business.

Julian became involved in the negotiations between his children. Dooksie and his father sided together, and negotiations broke down. On July 28, 1999, Linda filed suit. On October 10-13, 2000, a trial was held. Declaratory judgment was rendered on May 29, 2001, finding that Linda owned fifty percent of the stock of Long's Preferred Products, Inc. This was based on a finding that there was a sale of nineteen

1

shares of stock to Linda in 1986. The validity and authenticity of that transaction was an issue in a previous appeal to this court. *Minton v. Long's Preferred Products*, an unpublished opinion bearing docket number 02-260 (La.App. 3 Cir. 10/2/02), 829 So.2d 669, *writ denied*, 02-2716 (La. 1/10/03), 834 So.2d 440.

Subsequently, Julian filed suit on April 15, 2001, seeking to rescind the sale of the nineteen shares to Linda in 1986 on the basis that she had not paid for them. After Julian died on August 6, 2005, Dooksie was substituted as plaintiff. Following a four-day jury trial, the jury concluded that Linda had paid for the nineteen shares of stock. In an unpublished opinion, this court affirmed the judgment. *Long v. Minton*, 07-33 (La.App. 3 Cir. 5/2/07), 955 So.2d 278.

On February 14, 2006, Long's Preferred Products, Dooksie, Eva Long, and Tracy Percy filed a petition for nullity of the judgment of May 29, 2001, rendered in the original suit against them. They alleged that the judgment should be annulled because Linda committed fraud. The alleged fraud concerned Linda's testimony in the 2000 trial that she had signed a promissory note evidencing the 1986 sale of stock. In 2005 Linda's deposition testimony revealed that she now believes that she never signed the promissory note. In addition to the nullity action, both sides also filed motions for summary judgment.

A hearing was held on April 16, 2007. Judgment was rendered granting Linda's motion for summary judgment dismissing the petition for nullity. An exception of res judicata filed by Linda was dismissed as moot. The motion for summary judgment filed by Appellants was dismissed also. The Appellants appealed the judgment to this court.

## NULLITY

The Appellants allege that they are entitled to have the 2001 judgment annulled because it was based on false testimony by Linda that she had signed a promissory note for the sale of the nineteen shares of stock to her in 1986. They rely on La.Code Civ.P. art. 2004(A) which provides that "[a] final judgment obtained by fraud or ill practices may be annulled."

After the trial concerning the 1986 sale of stock, Linda became aware that her father had the original promissory note in his files the entire time. During his deposition, Dooksie testified that he originally thought he had also signed a note until his father showed him the original unsigned note. The note was produced to the Appellants' attorneys in the original case. However, the note was never introduced at the 2000 trial.

After inspecting the note, Linda filed pleadings in the 2001 rescission lawsuit that she had been mistaken in her previous testimony concerning signing of the promissory note. In response to motions filed by her father, the trial court ruled that she was estopped from testifying that she did not sign the promissory note in connection with the 1986 sale. However, the jury did find that Linda had paid for the stock. Based on the pleadings filed by Linda, the petition for nullity was then filed to have the 2001 declaratory judgment annulled.

In finding that the Appellants were not entitled to have the 2001 judgment annulled, the trial court found that they failed to meet the "deprivation of legal rights" requirement as set forth by the Louisiana Supreme Court in *Johnson v. Jones-Journet*, 320 So.2d 533 (La.1975). The trial court relied on the deposition testimony of Dooksie that the original unsigned promissory note was in Appellants' possession at all times before and during the 2000 trial. Based on this testimony, the trial court

3

held that Appellants were not deprived of knowledge or opportunity because they had the evidence to refute Linda's testimony during the trial.

A trial court's decision on a petition for nullity of a judgment is permitted discretion and is reviewed in light of whether the trial court's conclusions were reasonable. *Belle Pass Terminal, Inc. v. Jolin, Inc.*, 01-149 (La. 10/16/01), 800 So.2d 762; *Wright v. Louisiana Power & Light*, 06-1181 (La. 3/9/07), 951 So.2d 1058. Citing *Johnson*, 320 So.2d 533, and subsequent decisions, the Louisiana Supreme Court in *Wright*, 951 So.2d at 1067, noted two requirements for establishing an action of nullity: "(1) that the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief, and (2) that the enforcement of the judgment would have been unconscionable and inequitable."

It was further recognized that a "deprivation of legal rights" has been defined as "'[c]onduct which prevents an opposing party from having an opportunity to appear or to assert a defense'" in addition to the fact that a "'a fair and impartial trial is a legal right entitled to all participants in a legal proceeding.'" *Id*. (*quoting Kem Search, Inc. v. Sheffield*, 434 So.2d 1067, 1070 (La.1983); and *Belle Pass*, 800 So.2d at 767)(alteration in original)).

In the present case, the Appellants claim fraud based on Linda's changed testimony when presented with the original, unsigned promissory note. They argue that the result in the declaratory judgment trial would have been different had she testified that she had not signed the promissory note because this is the testimony that the trial court relied upon in making its decision. We disagree.

In reviewing the trial court's reasons for judgment issued in February 2001, one can see that it relied upon all circumstances surrounding the transfer of the stock in 1986, not just testimony that a promissory note had been signed.

4

Long's Preferred Products, Inc., a family corporation, has been run as many family corporations are done, somewhat informally. Faced with mounting health problems and concerns caused by his wife's gambling problems, Julian E. Long, the father, sought to protect his corporation with a redistribution of control of the stock. This was done without counsel advice, but through the help of his accountant, Mr. Maurice Daigrepont. The issue squarely presented to the Court is whether this transaction actually occurred, in light of the fact that there are no records remaining documenting the event. The Court finds after reviewing the witness' motivation and actions of parties, the transaction in 1986 did occur as a sale and the documents have been lost or destroyed. The existence of the documents would have been either placed in a wall for safekeeping, and consequently destroyed or removed, or maintained in the corporate office where they would be out of the reach of Petitioner, Linda K. Minton.

The Court is perplexed that Mr. Julian E. Long and Maurice Daigrepont would fabricate and perpetuate a fraud on the government for several years, to insure the viability of some "plan" to be placed in effect retroactively if something were to happen to him. This is compounded by the fact that after the need for the "plan" to protect the Mother was removed by the Mother's death, the documentation with the government continued. Taxes were paid pursuant to a transfer and the business was run as it always had been. By all accounts the parties were operating under the impression that Julian W. Long, the son, and Linda K. Minton owned equal shares.

Both counsel are correct, this comes to a credibility call. Apparently the frustration of Linda Minton not agreeing to the dictated terms for the purchase of her "fifty" percent interest in the Corporation resulted in unilateral reissuance of stock and a closing of her access to Corporate documents and minutes. The Court finds from 1986 up until the refusal to accept the offer for her one-half of the stock, the parties continued to operate as if they were equal owners of the stock. This strongly corroborates that all parties acquiesced in and accepted the 1986 transfer of the 38 shares to the children.

The testimony of the senior Mr. Long was understandably confused, even in its contradictions. Advancing age and what must be a difficult time in overseeing a family fight lead [sic] to some statements that indicated his intention was to run the Corporation as he wanted to, retaining some control, even though he actually had surrendered stock. The testimony of Mr. Daigrepont was entertaining and illuminating. He clearly drafted the documents and set up reporting requirements to the IRS to further the instructions of his client, but the Court finds it incredulous that he would perpetuate a fraud on the government for thirteen years without some understanding of an actual transfer of the stock. The court finds "The great plan" story to be more incredulous than the "rats ate the document". The parties took steps to transfer the stock, Ms. Minton testifies she executed certificates, she relinquished

5

control of the certificates, but the Corporation continued to operate and act as if the certificates were in effect. The Court finds that Ms. Minton has proven by a preponderance that the transfer of nineteen shares of stock to her in the 1986 transaction was accomplished. Based on an examination of the succession, her brother's offer to purchase fifty percent of the Corporation from her, and the manner in which the Corporation business was transacted until the family dispute on valuation arose, the Court makes a credibility call in favor of Linda K. Minton and accordingly rules declaratory judgment in her favor be granted.

We find that the trial court in the present case was correct in ruling that the Appellants had not been deprived of knowledge or opportunity. If they perceived that an unsigned promissory note was vital to their case to show that a 1986 sale of stock did not take place, they were the ones with the evidence to establish such at the 2000 trial.

This includes their argument that La.R.S. 10:8-319(a) in 1986 stated that the sale of securities required "that a contract has been made for sale of a stated quantity of described securities at a defined price." The Appellants argue that without a signed and executed promissory note, the trial court could not have found that a valid sale of stock had occurred. With this argument, Appellants are simply trying to get another bite at the apple. This argument does not constitute a basis for annulling the judgment. If this was an argument that Appellants wanted to make, they should have made it and presented it to the trial court with the unsigned promissory note during the 2000 trial. They cannot now use an action to annul to attempt a different legal argument as a basis that a 1986 sale did not occur.

At the time of the trial on the 1986 sale, Linda sincerely believed she had signed a promissory note, as did her brother before he was presented with original unsigned note prior to the original trial in this matter. The Appellants have not established any fraud or ill practices by Linda entitling them to annul the 2001 judgment.

6

## SUMMARY JUDGMENT

The Appellants also claim the trial court erred in granting summary judgment dismissing the petition for annulment in favor of Linda because there still exists genuine issues of material fact. They claim that genuine issues of material fact remain as to "(1) whether the onion skin note in defendants' possession was 'the original' note; and (2) whether this onion skin note (as opposed to a xerox copy), would have refuted Minton's false testimony at trial that she signed the promissory note."

Once again these issues pertain to the production of the "note" which was in Appellants's possession at the time of the original trial. The introduction of evidence which could have been presented at the original trial usually cannot serve as a basis for annulling the judgment. *Gladstone v. American Auto. Ass'n, Inc.*, 419 So.2d 1219 (La.1982); *Calcasieu Parish Sch. Bd. v. Parker*, 02-339 (La.App. 3 Cir. 10/2/02), 827 So.2d 543, *writ denied*, 02-2719 (La. 1/10/03), 834 So.2d 440.

Appellants are trying to raise issues which were within their control at the time of trial. They failed to introduce the note at the original trial. As we have previously discussed, the Appellants have not been deprived of any legal rights. Furthermore, it is not unconscionable nor inequitable to enforce the original judgment. As stated before, we agree with the trial court that there was no fraud or ill practices and, therefore; Linda was entitled to summary judgment dismissing the petition to annul.

For these reasons, the judgment of the trial court is affirmed. Cost of this appeal are assessed to Appellants, Julian W. Long, Eva Long, Long's Preferred Products, Inc., and Tracy Percy.

**AFFIRMED.**

7

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3 Uniform Rules, Court of Appeals.