489 So.2d 315 (1986)
Gasper SCHIRO
v.
TRAVELERS INSURANCE COMPANY, et al.
No. CA 4601.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1986.
*316 Salvador Anzelmo, City Atty., Michelle M. Ostrander, Asst. City Atty., New Orleans, for appellant.
Frank J. D'Amico, A Professional Law Corp., New Orleans, for appellees.
Before BARRY, CIACCIO and LOBRANO, JJ.
CIACCIO, Judge.
This is an action for damages arising out of a vehicular accident which occurred on June 7, 1981 at the intersection of Poydras Street and Claiborne Avenue in the City of New Orleans. The district court awarded the plaintiff damages of $95,389.59 against the City of New Orleans and the plaintiff's underinsurer, Aetna Casualty & Surety Company.[1] The City of New Orleans appealed the judgment complaining that the trial court erred in its findings on liability and quantum. The plaintiff answered the appeal seeking an increase in the damage award. We affirm the judgment of the district court.
The issues raised on appeal are: (1) Did the trial court err in finding the City of New Orleans liable? (2) Was the award of damages inadequate? (3) Did the trial court err in failing to include in its final judgment a provision for the amount paid in settlement by one of the co-defendants prior to trial?
Liability
In its reasons for judgment, the trial judge made the following findings regarding the issue of liability:
The Court has carefully given attention to all of the testimony in this case and the Court finds that there is no difficulty in finding both the City of New Orleans as well as Vickie [Feralow] Lewis were negligent and it was their negligence that was the proximate cause of this accident. The Court specifically finds that the plaintiff, Gasper J. Schiro, was not negligent and made no contribution whatsoever to the accident nor his subsequent injuries. The plaintiff therefore has sustained his burden of proof, he having shown by a preponderance of the evidence that Vickie [Feralow] Lewis was negligent and that she acknowledged on the stand that she was driving a GMC pickup truck and she had been traveling on Poydras Street away from the lake and she intended to make a left turn on south Claiborne in the direction of Canal Street. She says that she had a green light and that upon noticing that *317 she had a green light, she continued on her way, did not notice, as a matter of fact, she stated very specifically that she saw no reason to observe whether there was any traffic traveling on Poydras Street in the direction of the lake, which was the direction that the plaintiff was traveling in. We're not certain from her testimony where she meant she was looking at a green arrow, but in any event, as has been stated by the traffic engineer and has made sense to the Court, one who is going to make a left turn needs to at least observe whether there is traffic that is heading in a direction that would ordinarily have the right-of-way. As a matter of fact the Court noted how callous, not careless, callous the said defendant was in making her responses regarding her activities at that time immediately preceding this accident. The Court noted particularly her flare as she stated that she paid no attention to traffic on Poydras Street because she had a green light all the way. "Green light all the way," were her exact words. The Court finds that the investigating officer who arrived on the scene shortly thereafter is supportive of Ms. Lewis, the defendant, Vickie [Feralow] Lewis, and statements given to him would indicate clearly that she had observed the green light and had just tore through that intersection as if she was the only one using the road. However, the Court feels that she was mislead by the failure of the City of New Orleans to have that traffic signal in a proper posture and that it is certainly possible for the City to have repaired that standard in such a fashion that it could not be readily turned by an oversized truck or other means at that intersection. The testimony is quite clear, based on the plaintiff's Exhibit P5, thatI'm sorry, Plaintiff P6, that there were a number of instances where that traffic signal has been turned and could be turned by a vehicle that passed too close to it and/or was in fact turned. There is no doubt in the Court's mind that the City of New Orleans was negligent in its maintenance of that traffic signal, that it is possible to install a traffic signal in a fashion where it would not be so readily twisted.
* * * * * *
Having found that the City of New Orleans, as well as the defendant, Vickie [Feralow] Lewis, were liable in that they each had acted unreasonably or below the standard required of persons who have a responsibility to act, the Court is then faced with assessing relative degrees of negligence. The Court finds that the City of New Orleans was sixty percent negligent and that the defendant, Vickie [Feralow] Lewis was forty percent negligent.
The defendant, City of New Orleans argues that the trial court erred in finding the City negligent. The City reasons that Ms. Thurlow's inattention and not the twisted traffic signal was the sole cause-in-fact of this accident.
A cause-in-fact is a necessary antecedent without which the accident would not have occurred. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (La., 1962); Becnel v. St. John the Baptist Parish Police Jury, 364 So.2d 1074 (La.App., 4th Cir., 1978). A cause-in-fact exists if the negligent conduct is a substantial factor in bringing about the resultant harm. Dixie Drive It Yourself System v. American Beverage Co., supra; Becnel v. St. John the Baptist Parish Police Jury, supra.
A motorist approaching an intersection controlled by a semaphore signal who is favored by a green light is entitled to assume that traffic approaching the intersection from either side on a red light will comply with the red light and respect his right of way. Stephens v. Stephens Truck Lines, Inc., 478 So.2d 187 (La.App., 3rd Cir., 1985). He will be held accountable only if he could have avoided the accident with the slightest degree of care and fails to do so. See: Stephens v. Stephens Truck Lines, Inc., supra. All that is required is that the favored motorist maintain a general observation of the controlled *318 intersection. See: Stephens v. Stephens Truck Lines, Inc., supra, citing Jordan v. Great American Insurance Co., 248 So.2d 363 (La.App.4th Cir.1971).
The record supports the findings of the trial court with regard to Ms. Thurlow's actions.
According to Ms. Thurlow, she proceeded across Claiborne Avenue without looking. She was unable to see traffic moving on Poydras Street in the opposite direction, until she had proceeded about thirty feet into Claiborne Avenue. She did not see the plaintiff, Gasper Schiro, until her truck struck his car on the front driver's side of his vehicle. This testimony was not refuted.
In this case Ms. Thurlow failed to maintain even a general observation of this controlled intersection and in this regard she was negligent. This conduct played a substantial part in bringing about the resultant harm. Thus, the trial court correctly concluded that Ms. Thurlow was partly responsible for this accident. The City, however, was not relieved of liability because of Ms. Thurlow's negligence as her negligence was not an intervening and superseding cause of this accident.
The trial court's finding that the City of New Orleans was jointly liable for this accident is also fully supported by the record.
Although the City has a duty to maintain its traffic signals, it is not responsible for every accident resulting from a light malfunction. LeBlanc v. Acadian Credit Plan, Inc., 478 So.2d 191 (La.App. 3rd Cir.1985), writ denied 480 So.2d 742 (1986). In order to hold the City liable in negligence, there must be a showing of notice (constructive or actual) that a danger exists, LeBlanc v. Acadian Credit Plan, Inc., supra.
Elmer Darwin, transportation engineer with the New Orleans Department of Streets, testified with regard to the City's records indicating problems with the signal light at this intersection. He stated that on March 14, 1981 there was a problem with the signal light at Claiborne and Poydras Streets. On April 1, 1981 there is an indication in the City records of a complaint regarding the turn signal and a notation that the signal was out of alignment. On April 3, 1981 there is a record of the signal head being out of alignment. On April 6, 1981 a notation indicates that the light at this intersection was green in both directions. On April 28, 1981 there was a notation that the signal was turned in the wrong direction. There is also a notation that on July 7, 1981 concerning the signal light wherein the crosswalk signal was repositioned.
Although the City contends that it did not have notice of the misaligned traffic signal until after the accident, this allegation is contrary to the evidence presented.
Considering the recorded incident of misalignment of the traffic signal, the City was on notice that a danger existed at this intersection.
The City was negligent in failing to correct this condition and, as the trial court aptly stated, this negligence contributed to the accident in that Ms. Thurlow was "mislead by the failure of the City of New Orleans to have [the] traffic signal in a proper posture." Thus, this negligence was also a cause-in-fact of the accident.
The trial court correctly concluded that this accident resulted from the combined negligence of the defendant driver, in failing to maintain a general observation of the controlled intersection, and the City of New Orleans, in failing to take measures to prevent the traffic signal from being twisted out of alignment after having notice of this re-occurring dangerous condition. These factors jointly contributed to this accident.
The finding by the trial court that the City of New Orleans was jointly liable for this accident is fully supported by the record and we find no error in this regard. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La. App. 3rd Cir. 1979), writ denied, 374 So.2d 660 (1979).
*319 Quantum
The trial judge awarded the plaintiff damages as follows:

Past, present and future pain and
 suffering for injuries to spinal cord $50,000.00
Past, present and future pain and
 suffering for residual disability of
 the left ankle 10,000.00
Mental anguish, aggravation and
 inconvenience 25,000.00
Property damage 4,000.00
Medical specials, past and
 present 3,389.59
Future medical 3,000.00
 __________
Total Damages $95,389.59

Plaintiff contends that this damage award is inadequate.
In assessing damages in cases of quasi-offense much discretion is left to the trial judge. Perniciaro v. Brinch, 384 So.2d 392 (La. 1980). Before the appellate court will disturb such an award the record must clearly reveal that the trier of fact abused his discretion in making the award based upon the particular injuries and their effect upon the particular individual who sustained the injuries. Perniciaro v. Brinch, supra; Reck v. Stevens, 373 So.2d 498 (La.1979).
The record reveals, that at the time of this accident, Gasper Schiro was a forty-five year old lawyer who suffered from certain congenital deficiencies, one of which resulted in his walking with a limp.
Following this accident the plaintiff sustained injuries to his neck, the back of his head, his shoulder, left wrist and right arm. He also experienced dizziness. He was examined by Dr. Ploger on the day following this accident, and X rays were taken. He was found to have sustained a cervical strain and contusions of the right upper extremity. He was given Wygesic and told to take frequent hot showers. Plaintiff had a total of twenty-three visits to Dr. Ploger. He continued to experience pain in his neck, shoulder and left wrist until October 1983. During his period of treatment for these conditions he was given a muscle relaxant. In October, 1981, plaintiff complained to Dr. Ploger of a jumping in the right leg. In September, 1982, the plaintiff sustained a fracture of the left ankle after his leg failed. A cast was administered and he began to walk with the aid of crutches. This fracture was healed by October 18, 1982. During that time, X rays revealed a spondylolisthesis of L3 L4 and L5 vertebra associated with a marked disc narrowing. It was Dr. Ploger's opinion that the trauma sustained by the plaintiff in this accident aggravated the plaintiff's low back problems by placing stress in the weakened area. He was also of the opinion that this accident aggravated the plaintiff's spondylolisthesis and resulted in neurological problems. Dr. Ploger considered the plaintiff to have pressure on the nerve structure of his back which resulted in pain in one leg, jumping in one leg and a feeling of weakness in his extremity. He found the plaintiff to have a midline herniation of the intervertebral disc at the L5-S1 level, a circumferential bulging of the disc at L3-4 and L5-S1 and grade one spondylolisthesis at the L3-4 level. Dr. Ploger concluded that plaintiff sustained a 5% permanent impairment of the ankle and a 20% physical impairment of the spine due to his injuries and neurological problems.
In November 1981 Dr. Ploger referred the plaintiff to Dr. Patricia Cook for a neurological evaluation since he was suffering spasms in the lower extremities which had their onset some 4 to 5 weeks following this accident.
Dr. Cook's examination revealed that the plaintiff had a cleft lip scar and cleft palate, a slight articulatory disturbance and an upper neuron abnormality either in the spinal cord or the brain. Plaintiff was found to be hyperactive, especially in the right lower extremity and left bicep. He showed signs of upper motor neuron lesions. Plaintiff was seen by Dr. Cook on six visits. He was given several different medications in an unsuccessful attempt to alleviate the spasms. Finally, Dilantin was successfully prescribed for this condition and the nocturnal spasms were lessened. The plaintiff was diagnosed as having a spinal cord lesion dating back to age eleven which condition was probably aggravated *320 by this trauma as the trauma would flex and extend the spinal cord.
Plaintiff was also examined, on one occasion by Dr. Robert Ruel, an orthopedic surgeon. Dr. Ruel found the plaintiff had sustained a muscular sprain to the neck, shoulder, posterior chest wall and the left wrist. He found no residual in the lower extremity or the back which was directly attributable to the accident. There was no evidence of nerve root compression. Plaintiff experienced a jerking movement at night. He also had a right hip discomfort radiating from his lower leg to his knee associated with parethesias. Plaintiff experienced discomfort in the anterior of the right thigh and occasionally with the anterior aspect of the lateral aspect of the left foot. According to Dr. Ruel this may have been the aggravation of a pre-existing condition which occurred at birth or age eleven. He found plaintiff's complaints to be secondary to the spinal cord itself.
Considering the aggravation of the plaintiff's pre-existing spinal condition and neurological conditions, the 5% permanent impairment of his ankle, 20% impairment of his spine and his pain and suffering and their effect on this plaintiff, we cannot say that the trial judge's award of $88,000 general damages was an abuse of discretion.
Plaintiff alleges that the trial judge failed to compensate him for the 5% permanent residual disability resulting from his ankle fracture and for the bulging discs attributable to the trauma sustained in July 1981.
In speaking of the damage award following the trial, the trial judge stated "I was giving him everything in there." [Tr 318]. Although the listing of the elements of damages in the trial court judgment may be subject to different interpretations, it is clear to us that the general damage award of $88,000 encompassed an award for the residual disability resulting from the plaintiff's ankle fracture and also for the bulging discs attributable to the trauma sustained in the accident.
The plaintiff next argues that the trial court erred in failing to award a sum to compensate the plaintiff for a loss of earning capacity.
The record is devoid of any evidence on the issue of the plaintiff's loss of earning capacity. Under these circumstances the trial judge did not err in failing to compensate the plaintiff for this element of damages. Accordingly we find no error in the award of damages rendered by the trial court.
Defendant, City of New Orleans, contends that the trial court erred in failing to include in its final judgment a provision for the amount of $10,000 paid in settlement by the co-defendants Travelers Insurance Company and their insured.
The trial court awarded plaintiff the sum of $95,389.59 finding that the City was 60% liable and the defendant driver was 40% liable. The defendants were cast in judgment jointly and severally, or "in solido." C.C. Art. 1804. Johnson v. Jones-Journet, 320 So.2d 533 at 536 (La.1975). Should the City of New Orleans be required to pay the entire judgment (less any amount that was previously paid on behalf of the other tortfeasor) because of its solidary liability, it is entitled to contribution from the other tortfeasor on the basis of its percentage of fault. Under their joint liability the City is responsible for the sum of $57,233.75 and the driver is responsible for $38,155.84. Since the driver's insurer has already paid $10,000, she is now responsible, through her underinsurer, for the sum of $28,155.84. There was no need for the trial court to take into consideration the amount previously paid in settlement in rendering its judgment as the City's entitlement to contribution flows by operation of law (C.C. Art. 1804) and any amounts previously paid in settlement reduced the City's solidary liability.[2]
*321 The City further contends that liability for the judgment should be split equally between the City and Aetna Surety and Casualty because they are joint tortfeasors. Their argument is without merit as each tortfeasor is liable for its virile portion proportionate to the fault of each obligor. C.C. Art. 1804.
For the reasons assigned the judgment of the trial court is affirmed. Each party is to bear its own costs of appeal.
AFFIRMED.
NOTES
[1] The driver of the defendant's vehicle, Vickie Thurlow (Lewis), the owner of the vehicle, Steven Lewis, and their insurer, Travelers Insurance Company settled with the plaintiff, prior to trial, for the sum of $10,000.
[2] The record is devoid of evidence of a release, if any, given by plaintiff to Travelers Insurance Company and we must presume that plaintiff did nothing to release the defendant driver or her co-tortfeasor, the City of New Orleans.