STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-408

CALEB KENT AGUILLARD

VERSUS

JOHN CHRISTOPHER CHATMAN

**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 76289
HONORABLE CHUCK R. WEST, DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**M. Terrance Hoychick**
**Hoychick & Aguillard**
**(A Professional Law Corporation)**
**Post Office Drawer 391**
**Eunice, LA 70535-0391**
**(337) 457-9331**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
    **Caleb Kent Aguillard**

**Randy M. Guidry**
**Durio, McGoffin, Stagg & Ackermann**
**Post Office Box 51308**
**Lafayette, LA 70505-1308**
**(337) 233-0300**
**COUNSEL FOR DEFENDANT-APPELLANT:**
  **John Christopher Chatman**

**PICKETT, Judge.**

The defendant filed a reconventional demand seeking a declaration that a confirmed default judgment awarded against him is null and vacated or set aside because it was obtained through ill practices. The trial court denied the requested relief, and the defendant appealed. For the reasons discussed below, we affirm the judgment.

**FACTS**

On June 17, 2016, Caleb Aguillard filed a Petition for Injunctive Relief and for Damages [1] seeking a temporary restraining order, a preliminary injunction, a permanent injunction, and an award of damages against John Chatman. In his petition, Mr. Aguillard alleged that Mr. Chatman had been stalking and harassing him and that his acts constituted defamation. The trial court issued a Temporary Restraining Order (TRO) which set a hearing for July 8 on the issuance of a preliminary injunction. On that date, Mr. Chatman appeared at the hearing with counsel. Counsel informed the trial court that he was appearing with Mr. Chatman for the purposes of that hearing only and that he could not represent Mr. Chatman thereafter.

In light of Mr. Chatman being unrepresented, the trial court treated the hearing as a status conference. During the conference, the trial court advised Mr. Chatman to hire counsel and instructed him to file an answer within fifteen days or "there would be consequences." At the conclusion of the conference, the trial court issued an order which reflected the status of the matters at issue before the court at that time. The order, which was reduced to writing and served upon Mr. Chatman, provided:

> The above-captioned and docketed matter came before the Court
> for status conference on July 8, 2016[,] on a Petition for Protection from

---

[1] Mr. Chatman notes in argument that Mr. Aguillard's Petition improperly cumulates a summary proceeding and an ordinary proceeding. Pursuant to La.Code Civ.P. art. 926, the improper cumulation of actions is a dilatory exception that is waived if not pleaded. "[T]he dilatory exception shall be pleaded prior to or in the answer and, prior to or along with the filing of any pleading seeking relief . . . and in any event, prior to the signing of a final default judgment." La.Code Civ.P. art. 928. Mr. Chatman did not plead improper cumulation of Mr. Aguillard's actions against him; therefore, he waived it.

Stalking and a Petition for Injunctive Relief and for Damages filed by the Plaintiff. Present in court were the Plaintiff, Caleb Kent Aguillard, and the Defendant, John Chatman, represented by temporary counsel only for the purpose of that status conference; the hearing was continued upon a finding of just cause therefor by the Court; John Chatman was provided with notice and a copy of the Court's June 23, 2016 Temporary Restraining Order in open court. After the conference[,] the Court rendered the following orders:

IT IS ORDERED that this matter is continued without date.

IT IS FURTHER ORDERED that the parties are reciprocally enjoined from any form of harassment, abuse, stalking, and defamation of each other; this prohibition shall remain in full force and effect until further order of this Court.

The court minutes and transcript for the July 8 hearing also reflect that Mr. Aguillard filed a motion for preliminary default during the hearing which the trial court denied.

On August 9, Mr. Aguillard filed a Rule for Contempt, Motion for Preliminary Default and to Fix for Hearing/Order/Certification No Pleadings Filed. That same date the trial court signed an order that entered a preliminary default and ordered Mr. Chatman to show cause on September 16 why he should not be held in contempt for his willful violations of the trial court's previous order and why the injunctive relief and permanent order of protection should not be granted. Mr. Aguillard mailed Mr. Chatman notice of the order and the entry of preliminary default by certified mail and also had Mr. Chatman personally served with a copy of his rule for contempt and the order that entered the preliminary default against him and set the September 16 hearing date.

Mr. Aguillard appeared before the trial court on September 12 to confirm the preliminary default. After considering Mr. Aguillard's presentation of evidence and arguments in support of his claims, the trial court rendered judgment against Mr. Chatman, ordering him to pay Mr. Aguillard $60,000 in damages, together with legal interest from the date of demand and all costs of the proceeding.

By letter dated September 14, Mr. Chatman, in proper person, sought a continuance of the hearing scheduled for September 16, explaining that he had been

impacted by flooding that occurred August 12-13 in the area. The trial court granted the continuance and re-set the hearing for November 4. On November 2, Mr. Chatman filed a Reconventional Demand for Nullity, To Vacate and/or Set Aside Judgment of Default for Ill Practices. After conducting a telephone conference, the trial court rescheduled the November 4 hearing. A hearing on Mr. Chatman's Reconventional Demand was held December 13. The trial court denied his request to annul or vacate the confirmed default judgment, and Mr. Chatman filed this appeal.

## ASSIGNMENTS OF ERROR

In his appeal, Mr. Chatman assigns the following errors with the trial court's denial of his Reconventional Demand:

1. The trial [c]ourt erred by not applying Governor Edwards['] Executive Order of August 15, 2016, retroactive to August 12, 2016, which should have interrupted the time delays in Louisiana [c]ourts which would allow a redress of the September 12, 2016 Judgment.

2. The [trial] court erred when it denied Appellant's Motion for New Trial in the face of evidence that the [n]otices provided to him were questionable as to when the various matters would be heard.

3. The Default Judgment award for defamation or mental anguish contains an excessive and unconscionable high damage award for the evidence presented.

## DISCUSSION

### Did the Trial Court Err in Denying the Reconventional Demand?

We first address Mr. Chatman's second assignment of error because it bears upon our resolution of his first assignment of error. Mr. Chatman argues that Mr. Aguillard's having a preliminary default judgment entered against him and thereafter confirming that default judgment against him constitutes ill practices. He acknowledges that Mr. Aguillard did not commit any acts that constitute fraud; nevertheless, he asserts that Mr. Aguillard's actions constitute ill practices because he was unrepresented when Mr. Aguillard confirmed his default judgment and because

3

there was no deadline for him to file an answer to Mr. Aguillard's demand for damages.

At the hearing on his motion, Mr. Chatman testified that no deadline was set for him to file an answer during the July 8 status conference. He further asserted that the provision in the July 11 order, stating "this matter is continued without date", contributed to this understanding.

The trial court thoroughly addressed Mr. Chatman's claims when denying his motion:

> [T]his matter did come up before me on July 8th 2016[,] at that time I did not go through with the hearing[.] I instead held a Status Conference between the parties. That Status Conference was recorded[;] it was held in open court. Those records are there for anyone that cares to transcribe them. I reviewed a portion of that record . . . for today's hearing because I wanted to fix in my mind whether or not I had actually informed Mr. Chatman of his need to get an attorney[,] and *I did tell him not once but twice he had fifteen days to respond to this particular matter. I also told them [sic] that if he didn't there would be consequences[,] and I told [him] that once he got an attorney his attorney could request continuances or other* things *from this court and that we could handle it from there.* I also denied the Motion for Preliminary Default because quite frankly he had not had a chance to get an attorney at that time. He had been served in June. [A]lthough the fifteen days had past [sic] from the service[,] Mr. Ludeau did not enroll[.] Mr. Ludeau made an appearance just to request a continuance[,] and I granted it. On August 9th a Motion for a PD was signed[,] and that was served according to the record on August 12th 2016[,] on Mr. Chatman. . . . [The Judgment confirming the preliminary default] was signed, presented on September 12th 2016[,] that is the day that Mr. Aguillard and his witnesses showed up to confirm the PD that was entered on August 9th 2016. Now on September 14th[,] I received a letter from Mr. Chatman asking for a continuance of the things that had [sic] set for the 16th[,] and I . . . continued them and then eventually everybody got on board[,] and we are here today. At this point I believe the law was followed[,] and I have no choice but to deny the Motion to Vacate[.]

In addition to having Mr. Chatman served with his motion for preliminary default and the August 9 order entering the default, Mr. Aguillard documented that he mailed Mr. Chatman notice of the preliminary default entered against him by certified

4

mail on August 9, 2016, as required by La.Code Civ.P. art. 1702[2] and that the certified mail was not claimed after being provided notice by the postal service.

Mr. Chatman testified that he consulted two or three attorneys after the July 8 status conference, but explained that none of them could represent him. He also testified that after being served with the August 12 order, he relied upon his own interpretation and understanding of the documents, the trial court's instructions at the July 8 status conference, and the July 11 order to conclude that he did not need to do anything further until the September 16 hearing.

Louisiana Code of Civil Procedure Article 2004 provides for the annulment of any "judgment obtained by fraud or ill practices." In *Wright v. Louisiana Power & Light*, 06-1181, p. 12 (La. 3/9/07) 951 So.2d 1058, 1067 (citations omitted) (footnote omitted) (quoting *Power Marketing Direct, Inc. v. Foster*, 05-2023, p. 12 (La. 9/6/06), 938 So.2d 662, 670), our supreme court addressed a nullity action, explaining:

> In *Johnson v. Jones-Journet*, 320 So.2d 533 (La.1975), this Court reviewed the historical development of C.C.P. art. 2004 and noted that the jurisprudence under Art. 607 of the Code of Practice (the source of present C.C.P. art. 2004) established the following criteria for an action in nullity: (1) that the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief, and (2) that the enforcement of the judgment would have been unconscionable and inequitable. Since that time, this Court has accepted those two requirements as the necessary elements in establishing a nullity action under Art. 2004.
>
> However, those cases also further defined the types of conduct required to establish those two elements depending on the type of fraud or ill practice alleged. This Court has held that "the article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations where a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable."

---

[2] Louisiana Code of Civil Procedure Article 1702 provides, in pertinent part:

When a preliminary default has been entered against a party that is in default after having made an appearance of record in the case, notice of the date of the entry of the preliminary default must be sent by certified mail by the party obtaining the preliminary default to counsel of record for the party in default, or if there is no counsel of record, to the party in default, at least seven days, exclusive of holidays, before confirmation of the preliminary default.

5

Appellate courts review a trial court's decision to nullify a judgment to determine "whether the trial court's conclusions were reasonable," not "whether the trial court was right or wrong." *Belle Pass Terminal, Inc. v. Jolin, Inc.*, 01-149, p. 6 (La. 10/16/01), 800 So.2d 762, 766.

Mr. Chatman disregarded two warnings personally provided by the trial court at the July 8 hearing that he had fifteen days to file an answer to Mr. Aguillard's pleadings or "there would be consequences." Thereafter, he relied upon his interpretation of documents that included the notice that a preliminary default had been entered against him on August 12, rather than seeking advice from an attorney. He contends that Mr. Aguillard should have notified him that he would confirm the default judgment on September 12, but Mr. Aguillard fulfilled his legal requirements and provided Mr. Chatman the notice required by law.

Mr. Chatman had more than fifty days after being served with Mr. Aguillard's initial pleadings to file an answer before the preliminary default was entered and more than ninety days to file an answer before Mr. Aguillard confirmed the default against him. He had thirty-two days after being warned by the trial court at the July 8 hearing to file an answer within fifteen days or suffer the consequences before the preliminary default was entered and sixty-five days to file an answer before Mr. Aguillard confirmed the default against him. Lastly, after being served with the notice of the default, Mr. Chatman had thirty-one days to file an answer before Mr. Aguillard confirmed the default against him.

These facts show that Mr. Chatman ignored the trial court's warning to file an answer and the notice that a preliminary default had been entered. Therefore, he failed to show that he was deprived of any legal rights or that Mr. Aguillard's enforcement of his judgment against him would be unconscionable and inequitable. Accordingly, we find no abuse of discretion in the trial court's denial of his motion to annul the judgment.

***Did Executive Orders Issued by Governor Edwards Affect the Trial Court's Consideration of Mr. Aguillard's Motion to Confirm Preliminary Default?***

As previously discussed, a hearing was scheduled for September 16 on a rule for contempt filed by Mr. Aguillard. On September 14, Mr. Chatman sent a letter to the trial court asking for a continuance of the hearing, asserting that he and family members had been affected by flooding that occurred in August and that damages caused by the flooding required his assistance and attention. The trial court granted the continuance.

At the December 13 hearing, Mr. Chatman described how he and his family had been impacted by flooding that occurred in August and explained that that was why he sought a continuance of the September 16 hearing date. At the conclusion of the hearing on Mr. Chatman's motion to annul the judgment, the trial court noted that it had not considered the potential impact of the flooding on Mr. Chatman with regard to Mr. Aguillard's confirmation of the preliminary default and ordered the parties to brief the issue.

Over the course of three days in August 2016, heavy rainfall caused serious flooding in a large portion of southern Louisiana that prevented many individuals, businesses, and governmental agencies from carrying on their usual day-to-day activities. To protect the legal rights of persons involved in litigation in the judicial system, Governor John Bel Edwards issued three Executive Orders that suspended prescriptive and preemptive periods and other legal deadlines following the flooding. Mr. Chatman contends in this assignment of error that the trial court erred because it did not apply Executive Order 16-53 dated August 15 retroactively to August 12 with regard to Mr. Aguillard's confirmed default judgment.

On August 15, 2016, Governor Edwards issued Executive Order 16-53 which suspended all legal deadlines, including prescription and preemption, in all state courts until September 9, 2016. This Order applied "retroactively from Friday,

7

August 12, 2016." Two days later, Governor Edwards issued Executive Order 16-57, which amended Executive Order 16-53 and ordered that the suspension of all deadlines in legal proceedings, other than prescription and preemption, ended August 19, unless:

> [A] party to a pending matter can show that there is an inability to meet the deadlines caused by the events occurring in the parishes identified in Subsection B, then the court, administrative agency or board shall suspend deadlines specific to that matter until Friday, September 19, 2016.

Subsection B included Evangeline Parish. Accordingly, anyone seeking relief from a pending legal deadline in an Evangeline Parish court within the period August 12 through September 19 had to show that he was unable to meet the deadline due to flooding. Governor Edwards issued Executive Order 16-66 on September 9, which extended the deadlines in all legal proceedings in specified parishes, which included Evangeline Parish, until September 30. Executive Order 16-66 also required litigants seeking suspension of a deadline to show that they could not "meet a legal deadline due to the declared disaster."

During the hearing on his Reconventional Demand, Mr. Chatman was questioned at length by his attorney on his request for a continuance of the September 16 hearing. While Mr. Chatman discussed family members being affected by the flooding and his efforts to assist in their recovery efforts, he also admitted that he had a previously planned trip to Florida that day. Moreover, Mr. itsThe clear language of Executive Orders 16-53 and 16-57 provided for the retroactive application of the suspension of legal deadlines *only* if the party seeking suspension of a deadline showed he was unable to meet the deadline.

After considering the parties' post-trial briefs on this issue, the trial court confirmed the denial of Mr. Chatman's reconventional demand, stating:

> [I]n order to suspend the deadline to answer, defendant would have had to certify that he was in an affected area and that he is [sic] unable to meet a legal deadline due to the disaster. Defendant did not do so.

> Therefore, for the reasons assigned by this Court[] in its ruling on December 13, 2016[,] Defendant's Motion for Nullity to Vacate[] or set Aside the Judgment of Default is hereby denied.

Mr. Chatman corresponded directly with the trial court to inform it of his inability to attend the September 16 hearing and could have done the same if the August flooding prevented him from filing an answer herein; he did not. Accordingly, we find no error with the trial court's conclusion that Mr. Chatman failed to establish that he was entitled to relief from any legal deadlines as provided by Executive Orders 16-53 and 16-57.

### *Was the Trial Court's Damage Award Excessive?*

Mr. Chatman seeks review of the trial court's damage award. He did not, however, appeal the confirmed default judgment Mr. Aguillard obtained against him in the amount of $60,000. Accordingly, this issue is not before the court and need not be discussed.

### DISPOSITION

For the reasons discussed herein, the trial court's judgment denying John Chatman's Reconventional Demand for Nullity, To Vacate and/or Set Aside Judgment of Default for Ill Practices is affirmed. All costs are assessed to Mr. Chatman.

**AFFIRMED.**

9